OPINION
{¶ 1} This matter is before us on the appeal of David Walker from a trial court decision ordering Walker to pay $32,127 in restitution for the care and upkeep of seven bears that were ordered seized by the trial court in March, 2004. Walker has raised ten assignments of error, with subparts, in support of the appeal. For purposes of convenience, we will not list all the assignments of error together as a prelude to our discussion. Instead, we will recite each when we discuss the particular assignment of error.
 {¶ 2} Before we begin, we should also note that the State failed to file a timely brief. We filed a show cause order on June 29, 2005, asking the State to show cause within fourteen days for its failure to file a brief. However, the State did not respond to our order. We also notified the parties of the time and place for oral argument, by entries of August 3, 2005, and August 15, 2005, but the State failed to appear for oral argument.
 {¶ 3} On September 6, 2005, the State faxed a motion to our court, asking for permission to submit a brief. A brief and two affidavits were attached to the motion. The affidavits indicated that the State's brief was delivered to the Greene County Clerk of Courts for filing on July 18, 2005. For some unknown reason, the brief was never transmitted to our court, nor is there apparently a record of the brief having been filed. The State's attorney also explained that he had gone to the wrong courthouse for oral argument, based on his belief that oral argument was to be held in Greene County, Ohio.
 {¶ 4} After considering the matters alleged in the State's affidavits, we find that the State has established good cause for filing its brief. The State's motion is granted, and the brief is deemed filed. In the motion, the State also commented that it was willing to forego oral argument. Therefore, this matter is deemed submitted on the briefs and oral argument previously held with defense counsel present.
 I {¶ 5} In the first assignment of error, Walker claims that "the trial court exceeded its authority under O.R.C. § 2929.21 by ordering Appellant to pay restitution for the care of his seven black bears." The following facts are pertinent to this assignment of error. On August 8, 2003, Greene County Animal Control Officer, David Turner, was dispatched to a house on Jasper Road, on a report that a German Shepherd dog was loose and was possibly chasing a horse. When Turner arrived at the house, he saw a dog of the same description outside the fenced yard. However, before Turner could capture the dog, it somehow got back into the fenced area. Turner had been to the house previously for the same type of complaint, and was familiar with a resident of the house (David Walker). Because the gate was locked, Turner could not access the property, and simply left a pink slip indicating that a German Shepherd dog had been running loose. The Greene County Sheriff's Department then served Walker with a citation for violating R.C. 955.22, i.e., for failing to confine a dog. Since Walker had a prior conviction, he was charged with a fourth degree misdemeanor. See R.C. 955.99(E)(1).
 {¶ 6} The case was tried to the Xenia Municipal Court on September 16, 2004. According to the trial transcript, Walker's defense was that he was not the owner of the dog, and that on prior occasions, the Greene County Animal Control Department had allowed a dog's owner to be substituted for a non-owner who had received the citation. The trial court did not find this persuasive, and found Walker guilty of failing to confine the dog. Specifically, even though Walker did not own the dog, he was responsible for the dog because he was a "harborer." As sanctions, the court ordered Walker to surrender the German Shepherd as well as a Great Dane to Animal Control. Walker also received a thirty day jail sentence, which was suspended on condition that Walker cooperate with Animal Control and that he have no further violations for five years. The judge additionally ordered that Walker could have no other animals on his property for five years. This order was stayed so long as Walker had no further lack of cooperation for five years.
 {¶ 7} Because Walker questioned whether the court had authority to order removal of the dogs, the court allowed Walker to submit a memorandum on this point. After Walker filed a memorandum, the court issued another judgment entry on October 23, 2003, finding that Walker lacked standing to object to the order that the dogs be turned over to Greene County. The court reasoned that Walker had absolved himself of responsibility for the dogs, which did not belong to him. The court also addressed Walker's objection to the order limiting him from having other animals on the property. In this regard, the court noted that the order had been suspended pending Walker's cooperation. The court indicated it could not anticipate the "many ways" in which Walker could fail to cooperate.
 {¶ 8} In the entry, the court commented on the fact that Walker was currently on probation, and that further orders might be issued to address what kept getting Walker in trouble, i.e., his inability to confine the number of animals he then had. Although the record is devoid of any prior reference to bears, the court mentioned in this hearing that it had particular concern with three bears who were then on Walker's premises. The Court observed that the bears could potentially endanger people if they were not properly confined.
 {¶ 9} Walker filed a notice of appeal from this entry, which was docketed in our court as Greene App. No. 2003-CA-93. Walker also filed a notice of appeal from his conviction and sentence in another case in Xenia Municipal Court. In that case, Walker had been convicted of one count of failure to properly confine a vicious dog, and two counts of failure to confine a dog. The second appeal was docketed in our court as Greene App. No. 2003-CA-94.
 {¶ 10} While the two cases were pending on appeal, the trial court filed a judgment entry in the present case, indicating that the matter was before the court for "review." The record does not indicate that the court held any type of evidentiary hearing before issuing the judgment entry, nor does the record reveal that any type of prior notice was given to Walker. The judgment entry was filed on February 17, 2004. In the entry, the court noted that an incident had occurred on February 16, 2004, in the early morning hours, in which three bears were loose on the roadway and had to be corralled by law enforcement officers and others. Because the court was concerned about lack of an alarm system and backup generator for any electrical fencing, as well as Walker's ability to adequately afford to secure the animals, the court ordered Walker to remove the bears from his property within fourteen days. There is no evidentiary material in the record supporting these findings, nor was Walker ever charged with an offense relating to the bears.
 {¶ 11} On February 26, 2004, Walker filed a motion for stay of judgment, contending that a question existed about how the bears' confinement was breached. Walker also argued that his due process rights were violated because the court had issued the order without giving him notice or an opportunity to be heard. The court denied the motion for stay on February 27, 2004.
 {¶ 12} On February 26, 2004, Walker filed a notice of appeal from the decision ordering that he remove the bears. This appeal was docketed in our court as Greene App. No. 2004-CA-16. Walker also filed a motion for stay of execution in our court, and we then filed a decision and entry on March 2, 2004. In the entry, we noted that Walker had three pending appeals. We observed that Walker appeared to be most concerned about the trial court or the state taking steps to destroy the bears if they could not be transferred by the court-ordered deadline. We denied the motion for stay, but ordered that:
 {¶ 13} "if Walker fails to timely remove the bears from his property in compliance with the trial court's February 17, 2004 judgment entry, thereby necessitating a public agency to take possession and/or control of the bears, that the bears not be destroyed during the pendency of these appeals except in the event of an emergency necessitating their immediate destruction. Counsel for the parties shall take steps to see that copies of this order are served on the appropriate public agency or agencies that may take possession and/or control of these bears." Statev. Walker (Mar. 2, 2004), Greene App. Nos. 2003-CA-93, 2003-CA-94, and 2004-CA-16, slip. op., p. 3.
 {¶ 14} As ordered, Walker did remove the bears in a timely fashion to the property of another individual (Todd Bell). Subsequently, on March 9, 2004, the bears were apparently seized by Greene County Animal Control. The Court held another "review" hearing on March 11, 2004. The docket entries before us do not indicate that the trial court provided Walker with notice of the hearing. The court also did not give Walker an opportunity to present evidence or witnesses.
 {¶ 15} The hearing transcript indicates that Walker was questioned about his income, and about what he currently spent to feed the bears (which was about $50 total per month). The trial court then made a lengthy statement, expressing concern over protecting both the public and the animals. Some discussion occurred about the prospect of Walker regaining control over the bears, and the court indicated that Walker would have to obtain a United States Department of Agriculture (USDA) permit and the court would have to approve the facility.
 {¶ 16} On the day of the hearing, the court filed an order using the caption for both of Walker's criminal cases, as well as the caption for a case involving Todd Bell. The court ordered that expenses incurred or to be incurred for the care, feeding, housing, transportation, and medical expenses for the seven bears would be reimbursed by the Court and passed on to Walker and Todd as "restitution due," in such amounts as the court would hereafter order. The court also issued an order for transportation and housing of the bears, but sealed the order.
 {¶ 17} On April 13, 2004, the court issued an order indicating it would have a review hearing on April 28, 2004. At the review hearing, the court again did not provide Walker with an opportunity to present evidence or witnesses. The transcript of that hearing indicates that a representative of Animal Control stated that Walker had been cooperative with her, and that all the representative wanted was proof of income. Walker was then questioned about his income. Walker indicated that he received rent for a property owned by his mother, and paid the mortgage. Other than that, Walker claimed to have no other source of income. The court observed that in view of Walker's level of cooperation and lack of income, Walker was unlikely to get the bears back. The court stated that $10,827 in expenses had already been incurred, and that Walker should talk to his probation officer about how he was going to pay the bill.
 {¶ 18} After Walker requested an itemized list of fees and charges, the court filed an entry on June 11, 2004, itemizing $10,971 in expenses. Also on June 11, 2004, the court filed an entry ordering that two infant bears be declawed because Walker had refused to consent. The court then filed orders on June 28, 2004, and July 7, 2004, overruling Walker's request for a hearing on expenses, and clarifying certain aspects of the expenses. A notice of appeal was filed from the order of June 28, 2004, and was docketed in our court as Greene App. No. 2004-CA-83. This appeal was later dismissed for lack of a final appealable order. State v. Walker (June 8, 2005), Greene App. No. 2004-CA-83.
 {¶ 19} On July 9, 2004, an order of arrest was filed with the trial court, ordering Walker's arrest for probation violations. At a hearing held on July 12, 2004, the court told Walker he would be held on no bond for a probation violation and would have the right to be represented by counsel at the hearing. The court mentioned that there were five probation violations, but they had not all yet been written up. The two violations mentioned were failure to co-operate in paying or arranging a payment agreement for the bears, and non-payment of child support. After the hearing ended, Walker apparently made a rude comment to the judge, was held in contempt, and was sentenced to thirty days in jail.
 {¶ 20} On July 14, 2004, Walker filed a motion for reconsideration and to set bond. In the motion, Walker's counsel indicated that Walker had been arrested on July 9 for probation violations but was not told what the violations were. Walker was then held in jail until July 12, 2004, at which time he was brought to court for a hearing. Walker's counsel was never notified of the hearing. However, counsel apparently found out anyway, and notified the court twice that he would be present. When counsel was held up in another court on the day of the hearing, counsel contacted Xenia Municipal Court and received assurances from the clerk that the inmates were still in the hallway and that the delay should be all right. The clerk also promised to tell the court about counsel's problem getting to court. Despite this, the court went ahead without the presence of Walker's counsel, and the end result, as we noted, is that Walker was jailed for contempt.
 {¶ 21} On July 16, 2004, the trial court denied a motion for reconsideration and to set bond. Walker then filed a petition for writ of habeas corpus with the Greene County Common Pleas Court. Subsequently, on July 27, 2004, the Common Pleas Court vacated the criminal contempt finding and remanded the matter for trial on the contempt issue before another judge. The common pleas court noted that there was no need to summarily punish Walker to protect the integrity of the ongoing proceeding, because that proceeding had ended. The court commented that the better procedure would have been to detain Walker, set bond, and set the matter for a public trial with criminal due process procedure.
 {¶ 22} Walker filed a motion for recusal and affidavit of bias on July 29, 2004. However, the common pleas court subsequently concluded that the trial judge had not shown bias toward Walker. On August 4, 2004, the trial court filed an order continuing Walker on probation and also continuing the contempt matter indefinitely pending Walker's continued and future compliance on probation.
 {¶ 23} On December 23, 2004, we filed opinions in Greene App. Nos. 2003-CA-93, 2003-CA-94, and 2004-CA-16. In the predecessor appeal of the present case (No. 2003-CA-93), we affirmed the conviction for failure to confine a dog. We reasoned that Walker was liable as a harborer, even though he was not the owner of the dog. In addition, we found that the trial court had acted within its discretion under R.C. 2929.51(A)(2) by restricting Walker to animals he had on the premises. We noted that this sanction was actually stayed, and that Walker had a number of past violations for failure to confine. The trial court had also alluded to its concern with bears housed on the property and the potential for danger to the community if the bears escaped. See State v. Walker, Greene App. No. 2003-CA-93, 2004-Ohio-7258, at ¶ 21.
 {¶ 24} In State v. Walker, Greene App. No. 2003-CA-94, 2004-Ohio-7259, we found that the trial court and State had misread 955.22(D)(1) by requiring Walker to confine a pit bull in a locked yard that had a top. We concluded that putting a top on a yard fence was impracticable. Id. at ¶ 9. Since Walker had properly confined the dog in a locked yard, we reversed his conviction for failure to confine a vicious dog. Id. at ¶ 10-11. However, we did affirm Walker's convictions for failing to confine a German Shepherd and a Doberman Pincer, finding that those convictions were not against the manifest weight of the evidence. Id. at ¶ 142-2. We did not address any issues relating to the bears or to probation conditions.
 {¶ 25} Finally, in State v. Walker, Greene App. No. 2004-CA-16, 2004-Ohio7-252, we considered an appeal from a trial court order requiring Walker to rid his property of the bears. Id. at ¶ 1. We found that exigent circumstances might excuse what due process and Crim. R. 43(A) would otherwise require. Id. at ¶ 5-8. Because of the exigent circumstances, we did not find a due process violation in the court's ex parte order of February 17, 2004, which ordered Walker to remove the bears. Id. at ¶ 9-17. We also noted that a follow-up hearing occurred on March 11, 2004, in which Walker was afforded an opportunity to speak. Id. at ¶ 18.
 {¶ 26} The second assignment of error in that case dealt with whether the court had abused its discretion in ordering removal of the bears. In this regard, we found that the removal order was reasonably related to the offense for which Walker was on probation, i.e., the failure to confine a dog. Id. at ¶ 23.
 {¶ 27} As we mentioned, our opinions in the three appellate cases were issued on December 23, 2004. On February 8, 2005, the trial court issued another judgment entry "reviewing" the matter. Again, there is no indication that the court gave notice to Walker, held a hearing, or allowed the presentation of witnesses or evidence before issuing its ruling.
 {¶ 28} The first comment in the February 8, 2005 entry is that the Second District Court of Appeals had ruled that the Xenia Municipal Court acted properly in seizing the bears. This was incorrect. That issue was not before us, because none of the entries under appeal had ordered seizure of the bears. Accordingly, we considered only whether the Xenia Municipal Court had acted properly in ordering Walker to remove the bears from his premises. What happened thereafter has never been the subject of any appellate decision.
 {¶ 29} After making the above comment, the trial court noted that the expenses for upkeep of the bears though February, 2005, totaled approximately $32,127. The court stated that it would hold the bears until February 28, 2005 before disposing of them by placement. The court then ordered Walker to pay $32,127 in full by February 28, 2005, in order to retrieve the bears. The court indicated that it would release the bears to Walker if he paid that amount in full and could prove that the bears would be transferred to a USDA approved facility. Walker filed a notice of appeal from this decision on February 15, 2005, and also asked that the appeal be expedited. In addition, Walker asked us to stay the court's decision pending appeal. We granted the stay on February 18, 2005, on condition that Walker post bond in the amount of $45,000, cash or surety, with the Greene County Clerk of Courts no later than the close of business on February 25, 2005, The amount of bond was based on the amount already incurred, plus the amount that might reasonably be incurred during an expedited appeal.
 {¶ 30} Subsequently, on February 25, 2005, Walker filed a notice of replevin, petition for habeas corpus, and motion to set aside conviction in the Xenia Municipal Court. The trial court denied the motion on March 3, 2005. The court then held another review hearing on March 11, 2005, and ordered the bears placed at a facility to be determined. The court noted that since USDA facilities did not need the bears, selling the bears would be impossible. Walker also appealed from the March 3 and March 11 judgment entries, and that appeal has been docketed in this court as Greene App. No. 2005-CA-36.
 {¶ 31} Having now outlined the complicated procedural history of this case, we return to the first assignment of error. As we noted, Walker was convicted and was placed on probation for violating R.C. 955.22(C)(1), which requires owners, keepers, or harborers of dogs to keep them physically confined or restrained. Walker contends that the court exceeded its authority under R.C. 2929.21(E), which limits restitution to property damage caused by the offense. The State's response is that subsection (E) no longer applies because it was superseded by new statutory language that became effective on July 31, 2003.
 {¶ 32} A trial court's authority "is governed by the version of the Ohio Revised Code that was in effect at the time when the crime was committed." State v. Christy, Wyandot App. No. 16-04-04, 2004-Ohio-6963, at ¶ 7, n. 1. The crime involved in this case was committed on August 8, 2003. At that time, R.C. 955.99(E) provided that:
 {¶ 33} "(1) Whoever violates section 955.21 or division (B) or (C) of section 955.22 of the Revised Code shall be fined not less than twenty-five dollars or more than one hundred dollars on a first offense, and on each subsequent offense shall be fined not less than seventy-five dollars or more than two hundred fifty dollars and may be imprisoned for not more than thirty days.
 {¶ 34} "(2) In addition to the penalties prescribed in division (E)(1) of this section, if the offender is guilty of a violation of division (B) or (C) of section 955.22 of the Revised Code, the court may order the offender to personally supervise the dog that the offender owns, keeps, or harbors, to cause that dog to complete dog obedience training, or to do both."
 {¶ 35} Consistent with this statute, the trial court imposed a thirty day sentence. The court then suspended the sentence based on certain conditions, which included that Walker could not have other animals on his premises. This condition, in turn, was suspended, contingent on Walker's continued cooperation. Much later, after the bears were seized from another individual (Todd Bell), the court imposed a further condition, i.e., that Walker pay restitution for the cost of maintaining the bears.
 {¶ 36} The version of R.C. 2929.21(E) that was in effect on August 8, 2003, provided that:
 {¶ 37} "The court may require a person who is convicted of or pleads guilty to a misdemeanor to make restitution for all or part of the property damage that is caused by the offense and for all or part of the value of the property that is the subject of any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, that the person committed. If the court determines that the victim of the offense was sixty-five years of age or older or permanently or totally disabled at the time of the commission of the offense, the court, regardless of whether the offender knew the age of victim, shall consider this fact in favor of imposing restitution, but this fact shall not control the decision of the court."
 {¶ 38} Courts interpreting R.C. 2929.21(E) have rejected attempts to hold convicted individuals responsible for the expenses associated with the removal of animals from their property. In State v. Bybee (1999),134 Ohio App.3d 395, 731 N.E.2d 232, the trial court ordered a defendant who was convicted of cruelty to animals to make restitution payments to the Society for the Prevention of Cruelty to Animals (SPCA) for expenses related to boarding the defendant's dogs. The restitution was ordered as a condition of probation. When the defendant failed to pay on the $117,625 that was due, the trial court terminated the probation and committed the defendant to six consecutive ninety-day periods of home confinement. 134 Ohio App.3d at 398.
 {¶ 39} On appeal, the First District Court of Appeals held that expenses incurred in caring for animals removed from the defendant's home were not "property damage" as defined in R.C. 2929.21(E), and that the trial court had erred in ordering restitution for these costs as a condition of probation. Id. at 399. In reaching this holding, the First District followed similar decisions from the Eleventh and Twelfth Appellate Districts. Id. The Sixth District has also held that a trial court erred in ordering a defendant to pay restitution for expenses incurred in caring for animals that were seized and turned over to the Humane Society. State v. Covey (May 19, 2000), Lucas App. No. L-98-1173, 2000 WL 638951, *8.
 {¶ 40} In its brief, the State argues that R.C. 2929.21(E) no longer existed at the time of Walker's crime, due to amendments to the statute. However, the State is incorrect. Subsection (E) of R.C. 2929.21 was eliminated by Am. Sub. H.B. 490 in 2002, but the change was not effective until January 1, 2004. See Sections 1, 2, and 4 of Am. Sub. H.B. 490, 124th General Assembly (indicating that Sections 1 and 2 of H.B. 490, which included amendments to R.C. 2929.21, would not be effective until January 1, 2004). Because the crime for which Walker was actually convicted occurred on August 8, 2003, the pertinent statute is R.C.2929.21(E) as it existed before January 1, 2004. This is the version that we cited above.
 {¶ 41} The State also claims in its brief that R.C. 2929.21 was amended effective July 31, 2003. However, that amendment did not affect R.C. 2929.21(E). The legislation that was approved on July 31, 2003, simply made changes to R.C. 2929.21(H) and (I). These changes were part of legislation relating to sex offender registration and notification, and did not impact R.C. 2929.21(E). See Am. Sub. S.B. 5, 125th General Assembly, approved July 31, 2003.
 {¶ 42} Accordingly, R.C. 2929.21(E) as quoted above, does apply to this case, and restricts restitution to property damage caused by the crime. We do note that in some cases, courts have allowed non-property damages, like medical expenses, to be awarded to crime victims as a condition of probation. See State v. Shenefield (1997),122 Ohio App.3d 475, 480, 702 N.E.2d 134 (affirming a trial court order in an aggravated vehicular assault case that, as a further condition of probation, the defendant must just pay restitution of the victim's medical expenses).
 {¶ 43} The court in Sheffield relied on R.C. 2951.02(B), which mentions that a consideration in granting probation is whether the offender has made or will make restitution to the victim of his crime for the "injury, damage, or loss sustained." This wording is a bit broader than property damage, and the court, therefore, justified an award of medical expenses to the victim.
 {¶ 44} We reached a similar result in City Of Dayton v. Santos (Jan. 12, 2001), Montgomery App. No. 18324, 2001 WL 28672, *6-7. In Santos, we distinguished between restitution that is ordered as part of a sentence under R.C. 2929.21(E) and restitution that is ordered as a condition of probation under R.C. 2951.02(B)(9) and (C). In the latter situation, the statute allows some compensation of a victim's other damages, including medical expenses. Consequently, we allowed the victims to recover surveillance costs they had incurred in attempting to catch the defendant in the acts of stalking or destroying their property. Id.
 {¶ 45} Based on the above authority, we agree that restitution may not be strictly limited to a victim's property damage. Nonetheless, the restitution that was ordered in the present case did not fit within the above framework and was not authorized under the law.
 {¶ 46} In State v. Bender, Champaign App. No. 2004 CA 11, 2005-Ohio-919, we noted that:
 {¶ 47} "[a] sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted. * * * `Thus, restitution can be ordered only for those actsthat constitute the crime for which the defendant was convicted andsentenced.' * * * A trial court abuses its discretion when it orders restitution in an amount which has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the offense for which the defendant was convicted." Id. at ¶ 10, quoting from State v. Hooks (2000), 135 Ohio App.3d at 746, 749, 735 N.E.2d 523
(emphasis added).
 {¶ 48} The crime for which Walker was convicted and sentenced was failure to confine a dog. If that crime itself had caused property damage or personal injury to a victim, the trial court could have ordered Walker to pay the victim restitution for the damage. However, Walker's failure to confine a dog did not cause any property damage or personal injury to anyone. Accordingly, the trial court did not have the authority to order Walker to pay restitution for the upkeep and care of animals that were not the subject of the criminal charge.
 {¶ 49} Furthermore, based on Bybee, State v. Covey, and the other cases mentioned in Bybee, the trial court would not have been able to order restitution for the upkeep and care of the bears even if Walker had been convicted of failing to confine the bears. The trial court's orders in the present case may have been well-intentioned, but the court failed to comply with the law.
 {¶ 50} Based on the preceding discussion, the first assignment of error has merit and is sustained.
 II {¶ 51} In the second assignment of error, Walker contends that the trial court's order is an in personam forfeiture amounting to an excessive fine under the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution. Before discussing this issue, we should note that the present case involves two "forfeitures" and separate claims of error that are associated with each. The first alleged forfeiture (and the one being raised in the second assignment of error) is the $32,127 that was imposed as restitution for the cost of caring for the bears. Walker contends this is an excessive fine under the United States and Ohio Constitutions. The second alleged forfeiture is the seizure and forfeiture of the bears. Walker challenges that forfeiture in the fourth, fifth, and sixth assignments of error.
 {¶ 52} In responding to the second assignment of error, the State claims that the forfeiture of the seven bears was not a fine but was restitution for tax dollars spent to care for the bears. In this context, the State argues that "Walker's failure to properly confine his seven bears while on probation for two similar offenses * * * constitutes the offense in this case."
 {¶ 53} The State is incorrect. As we mentioned, the second assignment of error is not based on forfeiture of the bears. Furthermore, Walker was never charged with, nor was he ever convicted of an offense related to the bears. The issue in the second assignment of error is simply whether the $32,127 restitution order was an improper in personam forfeiture.
 {¶ 54} "In personam forfeitures are `assessments, whether monetary or in kind, to punish the property owner's criminal conduct.' * * * They are actions against the person, not the property, a form of punishment no different from a fine." State v. Ziepfel (1995),107 Ohio App.3d 646, 651, 669 N.E.2d 299. In Bybee, the First District Court of Appeals concluded that the order of restitution of $117, 625 for the care of the defendant's animals had "all the badges of a criminal in personam forfeiture subject to the Excessive Fines Clause of the Eighth
Amendment." 134 Ohio App.3d at 400. Therefore, the First District concluded that even if it found restitution valid as a condition of probation, it would have remanded the case to the trial court for assessment of the proportionality of the forfeiture. Id. The court did not remand the case, however, because restitution was improper.
 {¶ 55} In State v. Hill, 70 Ohio St.3d 25, 34, 1994-Ohio-12,635 N.E.2d 1248, the Ohio Supreme Court discussed forfeiture under R.C.2925.42, which provides for forfeiture of property involved in felony drug offenses. The Ohio Supreme Court held that before a trial court may enter an order of forfeiture, the court "must make an independent determination whether forfeiture of that property is an `excessive fine' prohibited by the Excessive Fine Clauses of the Ohio and United States Constitutions." Id. at syllabus. The court did not establish a particular test in Hill, but later cases have applied a "proportionality test" to decide if forfeitures of property are constitutionally valid. See, e.g.,State v. Harold (1996), 109 Ohio App.3d 87, 93-94, 671 N.E.2d 1078.
 {¶ 56} We have already concluded that the trial court could not impose restitution for the upkeep and care of the bears. However, even if restitution of this sort could have been ordered, the trial court clearly failed to comply with appropriate procedures. This error was harmless in view of the disposition of the first assignment of error. Accordingly, we will overrule the second assignment of error.
 III {¶ 57} In the third assignment of error, Walker contends that "the trial court erred by imposing a restitution order upon the Appellant that exceeded the amount he is able to pay as an indigent person in violation of O.R.C. § 2929.22(F)." This assignment of error is moot, based on our resolution of the first assignment of error.
 IV {¶ 58} The fourth, fifth, and sixth assignments of error deal with the taking of the bears and will be considered together. In the fourth assignment of error, Walker claims that the trial court's actions were an "in rem forfeiture amounting to an excessive fine under the Eighth
Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution." The fifth assignment of error challenges the confiscation of the bears because they were not subject to forfeiture under R.C. 955.22, R.C. 951.03, or R.C. 2933.41-43. And finally, Walker contends in the sixth assignment of error that the trial court erred in confiscating the bears without due process of law in violation of the Fifth
and Fourteenth Amendments to the United States Constitution.
 {¶ 59} In opposing these assignments of error, the State makes several main points. First, the State argues that the bears cannot be the subject of an in rem criminal forfeiture because they were not the "offender;" instead, Walker's failure to confine the bears when he was on probation for two similar offenses constitutes the "offense" in this case. The State also contends in connection with the fifth assignment of error that using the bears in violation of Walker's probation terms made the bears "contraband" that the court was entitled to seize under R.C. 2933.41-43. And finally, the State argues that Walker's due process rights were not violated by the State's failure to seek forfeiture of the bears. The State's claim in this regard is that Walker was not sentenced regarding the bears. The State likens the situation to a defendant's posting of bond, and subsequent forfeiture when the bond conditions are not met.
 {¶ 60} In our opinion, the State's arguments are contradictory and confusing. The State's difficulty in clearly articulating a position may stem from the trial judge's failure to comply with rudimentary due process requirements. As we mentioned, the trial judge never held any type of evidentiary hearing after ordering Walker to remove the bears from his property. Instead, the judge merely held various "review" hearings, at which she made statements about events that happened outside court, and about which no testimony or evidence was presented. The judge also did not give Walker an opportunity to examine witnesses or to present his own evidence. Then, after making her own observations of "fact," the judge issued decisions about what would be done with the bears.
 {¶ 61} There is no doubt that animals may be taken from an individual, when those animals are the subject of a criminal offense. For example, in Bybee, the SPCA confiscated one hundred eighty-eight dogs that were badly neglected, and then sold the dogs after the defendant was convicted of cruelty to animals. 134 Ohio App.3d at 397-98. A court may even order, as a condition of probation, that a defendant divest himself or herself of animals that are not the subject of the charge. See Statev. Sheets (1996), 112 Ohio App.3d 1, 677 N.E.2d 818.
 {¶ 62} In Sheets, the defendant pled no contest to charges of cruelty to nine horses, and, as a condition of probation, the court ordered that he divest himself of all the horses that he owned (about 122 horses). The Fourth District Court of Appeals upheld this condition because it was reasonably related to rehabilitation of the offender, had some relationship to the crime for which the offender was convicted, and related to conduct that was criminal and serves the statutory ends of probation. 112 Ohio App.3d at 823.
 {¶ 63} Consistent with these cases, we concluded in our prior opinion that the order requiring Walker to remove the bears from his property was reasonably related to his conviction for failure to confine a dog. SeeState v. Walker, Greene App. No. 2004-CA-16, 2004-Ohio-7252, at ¶ 23. Therefore, there was no problem with the removal order. What does pose a problem are the orders the court issued thereafter.
 {¶ 64} Our research indicates that cases allowing forfeiture of animals involve a common thread, i.e., a connection to statutes authorizing seizure or forfeiture. For example, in City of Eastlake v.Kosec (1985), 29 Ohio App.3d 259, 504 N.E.2d 1180, the defendant was charged with cruelty to animals after ten dogs that he owned were found suffering from malnutrition and dehydration. The defendant pled guilty to the lesser offense of abandoning animals, which was a minor misdemeanor, and his dogs were confiscated and turned over to the humane society. On appeal, the defendant claimed that because the dogs were worth more than $100, he was unfairly deprived of his property for a minor misdemeanor. In rejecting this claim, the court of appeals relied on R.C. 1717.09, which allows members of a county humane society to take charge of any animal that is cruelly treated. The members are also authorized to deliver possession of the animal to the humane society.29 Ohio App.3d at 260. Accord State v. Bartlett (May 2, 1997), Trumbull App. No. 96-T-5459, 1997 WL 269188 (noting that a trial court has authority under R.C. 1717.09 to order confiscation of any animal following a defendant's conviction of cruelty to animals).
 {¶ 65} In contrast to the above situation, the present case did not involve cruelty to animals, and the humane society would not have been entitled to take charge of the bears under R.C. 1717.09.
 {¶ 66} Similarly, in Sheets, the defendant was convicted of cruelty to animals. The statute involved in that case (R.C. 959.13) has a corresponding penalty statute (R.C. 959.99) that allows forfeiture of animals or livestock that are treated cruelly. 112 Ohio App.3d at 8. In pertinent part, R.C. 959.99 provides that:
 {¶ 67} "[w]hoever violates division (A) of section 959.13 of the Revised Code is guilty of a misdemeanor of the second degree. In addition, the court may order the offender to forfeit the animal or livestock and may provide for its disposition, including, but not limited to, the sale of the animal or livestock. If an animal or livestock is forfeited and sold pursuant to this division, the proceeds from the sale first shall be applied to pay the expenses incurred with regard to the care of the animal from the time it was taken from the custody of the former owner. The balance of the proceeds from the sale, if any, shall be paid to the former owner of the animal." R.C. 959.99(D).
 {¶ 68} The defendant in Sheets did argue that divestiture of 110 animals, instead of only the ten animals for which he had been convicted, exceeded the divestiture power of R.C. 959.99(D). However, the court of appeals found that this condition was reasonably related to rehabilitating the offender, had some relationship to the crime for which he was convicted, and related to conduct that was criminal or was reasonably related to future criminality and served the statutory ends of probation. Id. See, also, State v. Kilburn (Mar. 3, 1998), Warren App. No. 96-CA-12-130, 1998 WL 142412 (after a defendant was found guilty of thirty-three counts of animal cruelty, the court ordered forfeiture of those animals, plus several additional animals that had been removed from the property).
 {¶ 69} Again, the present case did not involve charges of cruelty to animals, and the forfeiture provisions in R.C. 959.99(D) did not apply. Instead, Walker was convicted of failing to confine a dog under R.C.955.22(C). The applicable penalty statute is R.C. 955.99, which differs from the other penalty statutes, and does not mention forfeiture. Under R.C. 955.99(E)(1), persons who violate R.C. 955.22(C):
 {¶ 70} "shall be fined not less than twenty-five dollars or more than one hundred dollars on a first offense, and on each subsequent offense shall be fined not less than seventy-five dollars or more than two hundred fifty dollars and may be imprisoned for not more than thirty days."
 {¶ 71} Consistent with this statute, Walker was sentenced to thirty days imprisonment, as his offense was a subsequent offense. R.C.955.99(E)(2) goes on to state that:
 {¶ 72} "In addition to the penalties prescribed in division (E)(1) of this section, if the offender is guilty of a violation of division (B) or (C) of section 955.22 of the Revised Code, the court may order the offender to personally supervise the dog that the offender owns, keeps, or harbors, to cause that dog to complete dog obedience training, or to do both."
 {¶ 73} Accordingly, R.C. 955.99 does not contemplate forfeiture of animals. Instead, it focuses on the defendant providing either more stringent supervision or obedience training for the dog. R.C. 955.99 does allow for destruction of dogs, but only of dangerous or vicious dogs, which may be destroyed upon court order. See R.C. 955.99(F) and (G). Even in that situation, due process has been applied. For example, in Statev. Browning, Fairfield App. Nos. 2002CA42, 2002CA43, and 2002CA44, 2002-Ohio-6978, the defendants were convicted of fifteen counts of failing to confine vicious dogs. At the sentencing hearing, the trial court took testimony from witnesses for both sides before concluding that two of the fifteen dogs were aggressive and needed to be destroyed. Id. at ¶ 9-11.
 {¶ 74} The Ohio Supreme Court has said that:
 {¶ 75} "[i]n determining whether a condition of probation is related to the `interests of doing justice, rehabilitating the offender, and insuring his good behavior,' courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." State v. Jones
(1990), 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (citations omitted).
 {¶ 76} Based on the above discussion, we find that the trial court abused its discretion in ordering the bears forfeited unless Walker paid restitution for their care. As a preliminary point, we reiterate that the court erred in ordering restitution for the care of the bears. Consequently, the court could not have grounded forfeiture on the failure to comply with its improper order.
 {¶ 77} As an additional matter, forfeiture was not originally ordered as a "condition of probation." The condition of probation in this case was that Walker "cooperate." If the trial court felt Walker was not cooperating, the proper procedure would have been to institute proceedings to revoke probation. In that event, the court would have had to comply with minimum due process requirements, which consist of:
 {¶ 78} "(a) written notice of the claimed violations of parole (probation); (b) disclosure to the parolee (probationer) of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body * * * and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking * * * parole (probation)." Bender, 2005-Ohio-919, at ¶ 18, quoting from Statev. Miller (1975), 42 Ohio St.2d 102, 104, 326 N.E.2d 259.
 {¶ 79} Furthermore, even if forfeiture were ordered as a condition of probation, it would not have been appropriate because the penalty statutes for failing to confine dogs do not even mention forfeiture as a possibility. Forfeiture, therefore, lacks sufficient relationship to the crime for which the defendant was convicted. 49 Ohio St.3d at 53. We are aware that we previously upheld an order requiring Walker to remove the bears from his property. However, a removal order is quite different from confiscating property. In the first situation, an individual retains dominion over his property, even though he has to move the property from its current location; in the second situation, the individual is stripped completely of control. A stronger relationship should be required where the deprivation is great.
 {¶ 80} Finally, even if forfeiture could have properly been applied, the trial court failed to provide Walker with due process. Trial courts do have broad discretion in fashioning probation requirements, but their discretion is not unlimited. 49 Ohio St.3d at 52.
 {¶ 81} As we mentioned, the original condition under which Walker's sentence was suspended was that he not possess animals. This condition was then also suspended, contingent on Walker's continued "cooperation." When the trial court found that a bear had escaped confinement from Walker's premises, the court ordered Walker to remove the bears. The fact of an escape does not necessarily indicate that Walker failed to cooperate, and the trial court never held an evidentiary hearing on this issue. Furthermore, Walker did cooperate with the court order by removing the bears and placing them on the property of Todd Bell.
 {¶ 82} Subsequently, a bear escaped confinement at Bell's premises. We do not know how the escape occurred, or why, or even if Walker had anything to do with it — because there is no evidence in the record.
Instead of holding a probation revocation hearing, and issuing appropriate orders after providing Walker with due process, the trial court held a number of "review" hearings, at which the court did little more than discuss its thoughts and opinions on matters that were outside the record.
 {¶ 83} Various methods could have provided due process. As we said, the court could have tried to revoke Walker's probation. Another alternative might have been for the State to charge Walker with a crime based on the bears' escape from Bell's property, if the facts warranted such a charge. We express no opinion on what the proper charge might have been, but the statutory scheme governing other crimes may have provided a more sufficient connection to forfeiture of the bears. Again, we stress that Walker was not charged with, nor was he convicted of an "offense" concerning the bears.
 {¶ 84} We note that some Ohio statutes do allow forfeiture of seized property. See, e.g., R.C. 2933.41 and R.C. 2933.43. In such situations,the State is required to file an application for forfeiture and variousdue process is accorded. We express no opinion on whether such a forfeiture in this case would be considered a civil remedy or an additional criminal punishment that is impermissible. Compare State v.Adams (1995), 105 Ohio App.3d 492, 501-502, 664 N.E.2d 588
(discussing double jeopardy and whether forfeiture statutes are civil or criminal).
 {¶ 85} We also note that a Humane Society may obtain a possessory lien under R.C. 1311.48 for the care of animals. In this regard, R.C. 1311.48
states that "[a]ny person who feeds or boards an animal under contract with the owner shall have a lien on such animal to secure payment for food and board furnished." In State v. Stevenson (Aug. 31, 1994), Wayne App. No. 2855-W, 1994 WL 466777, the court found, upon the defendant's motion for return of seized property, that the defendant had entered into an oral contract with the Humane Society. Id. at *3. Again, we express no opinion on whether such a procedure would apply in this case. See, also,e.g., R.C. 1717.13, which allows any person to take possession of an animal to protect the animal from neglect. This particular statute does require a showing of neglect prior to a lawful entry and seizure. CompareZageris v. Whitehall (1991), 72 Ohio App.3d 178, 183, 594 N.E.2d 129
(in an action brought against a city and city officials for seizing dogs owned by the plaintiff, the court of appeals held that summary judgment for the defendants was improper due to factual issues about neglect).
 {¶ 86} Finally, R.C. 951.11 grants a possessory lien in favor of individuals who find animals at large in violation of R.C. 951.01 or951.02. Certain due process procedures apply, and there is also an opportunity under R.C. 951.12 for owners or keepers to prove that the escape was without their knowledge or fault. Again, none of these procedures were followed in this case.
 {¶ 87} As we mentioned, Walker claims that the trial court's taking of the bears was an in rem forfeiture that constituted an excessive fine under the Eighth Amendment.
 {¶ 88} "Statutory in rem forfeitures are confiscations of property rights based on improper use of the property, regardless of whether the owner has violated the law. * * * The property to which they apply is not contraband, * * * nor is it necessarily property that can only be used for illegal purposes. The theory of in rem forfeiture is said to be that the lawful property has committed an offense. * * *
 {¶ 89} "However the theory may be expressed, * * * the taking of lawful property must be considered in whole or in part * * * punitive. Its purpose is not compensatory, to make someone whole for injury caused by unlawful use of the property. * * * Punishment is being imposed, whether one quaintly considers its object to be the property itself, or more realistically regards its object to be the property's owner." Austinv. United States (1993), 509 U.S. 602, 624-35, 113 S.Ct. 2801, 2813-14,125 L.Ed.2d 488 (Scalia, concurring in part and concurring in the judgment).
 {¶ 90} The State claims that in rem forfeiture is not applicable in this case because the bears were not the offender; rather, the offense was Walker's failure to confine the bears. The State is incorrect. In the first place, the "offense" involved in this case was failure to confine a dog. Walker could possibly have been charged with an offense based on the bears' escape, but that did not happen. The State could also have filed a forfeiture action, but that did not happen, either.
 {¶ 91} Furthermore, in typical in rem forfeiture situations, the property does not commit offenses, because the property is usually inanimate. For example, in State v. Casalicchio (1991), 58 Ohio St.3d 178,569 N.E.2d 916, the State petitioned the trial court for forfeiture of an automobile in which illegal drugs were found after the defendant had been arrested for reckless operation. As Justice Scalia noted in Austin, the real object of a forfeiture is the property owner.
 {¶ 92} Another key concept in forfeiture is the use of statutory authority. In other words, some type of authority must exist in order for the State to seize an individual's property. As we mentioned, some Ohio statutes do allow seizure or forfeiture of animals. Other statutes in Ohio specifically provide for forfeiture of property. However, the State did not resort to any statutory procedures. The point is that neither a court nor the State can simply decide on its own to confiscate an individual's property, without affording the individual due process of law.
 {¶ 93} Accordingly, the fourth, fifth, and sixth assignments of error are sustained.
 V {¶ 94} In the seventh assignment of error, Walker contends that the trial court erred by disposing of Walker's property contrary to the provisions set forth in R.C. 2329.01 et. seq. and R.C. 2933.41-43. In particular, Walker claims that the court should have disposed of the bears at public sale, and should have credited him with the proceeds.
 {¶ 95} When the present appeal was filed, the trial court had not yet physically disposed of the bears. Consequently, we have no idea if the bears were sold or were given away (the record does not reflect precisely where the bears were sent). As a result, this issue is not properly before us, and the seventh assignment of error is overruled as premature. We note that the same assignment of error has been raised in Greene App. No. 2005-CA-36, which does involve an appeal from an order disposing of the bears.
 {¶ 96} Based on the preceding discussion, the seventh assignment of error is overruled as premature.
 VI {¶ 97} In the eight assignment of error, Walker contends that the trial court erred in disposing of the bears, since the court was contractually obligated to maintain the animals pursuant to a payment plan that the court established. Walker claims that he entered this contract under duress, but asks, nonetheless that the contract be enforced. The State's response is that the agreement did not mention the care of the bears, and no such terms should be implied.
 {¶ 98} The agreement in question is dated July 8, 2004, and states that Walker will pay $200 per month toward his fines and costs, beginning in August, 2004. Both Walker and his probation officer, Sandy Clifton, signed the agreement. The agreement also bears a notation that says, among other things, that "I hearby [sic] sign this document against my will under penalty of jail." The agreement does not refer to the bears. However, the background surrounding the agreement, as noted above, is that Walker was told he would be responsible for paying for the care of the bears, and was told to contact his probation officer to discuss how he was going to pay for their care.
 {¶ 99} In view of the disposition of the previous assignments of error, we need not address this issue. Since the trial court abused its discretion in ordering restitution and did not accord due process after the bears were seized, the issue of whether a contract existed for the care of the bears is irrelevant. Accordingly, the eighth assignment of error is overruled as moot.
 VI {¶ 100} The ninth assignment of error challenges the trial court's action in requiring Walker to become licensed through the United States Department of Agriculture in order to own, possess, and/or raise bears in the State of Ohio. Due to our disposition of other assignments of error, this assignment of error is also overruled as moot.
 VII {¶ 101} In the tenth and final assignment of error, Walker claims he is entitled to habeas corpus relief under an unconstitutional statute. Walker's argument in this regard is that R.C. 955.22 was declared unconstitutional in its entirety in State v. Cowan, 103 Ohio St.3d 144,2004-Ohio-4777, 814 N.E.2d 846. Cowan was issued on September 22, 2004, or during the time Walker's convictions were on direct appeal to our court.
 {¶ 102} After reviewing this matter, we find that Cowan is inapplicable, because it invalidated only the part of R.C. 955.22 that allows dog wardens to label a dog vicious or dangerous without giving the dog owner an opportunity to contest the label. In Cowan, the Ohio Supreme Court noted that as soon as a dog warden makes a unilateral decision that a dog is vicious or dangerous, the statute places restrictions on the owner and dog. Id. at ¶ 11-13. The court found that this is constitutionally impermissible, because a dog owner must defy the statutory regulations and become a criminal defendant in order to contest the classification. Id. at ¶ 13.
 {¶ 103} The unconstitutionality of R.C. 955.22 as outlined in Cowan is irrelevant, since the present case does not involve a classification of dogs as dangerous or vicious. Therefore, the tenth assignment of error is without merit and is overruled.
 {¶ 104} Based on the preceding discussion, the first, fourth, fifth, and sixth assignments of error are sustained. The second and tenth assignments of error are overruled. The third, eighth, and ninth assignments of error are overruled as moot, and the seventh assignment of error is overruled as premature. Accordingly, the trial court's order of February 8, 2005, is reversed.
Wolff, J., and Grady, J., concur.