OPINION
{¶ 1} David Walker appeals from two judgments of the Xenia Municipal Court. In a March 3, 2005, judgment, the court refused to set aside Walker's prior conviction for failure to confine a dog and refused to return seven bears to him. In a March 11, 2005, judgment, the court "reviewed" whether Walker had paid an amount previously ordered by the court for the county's care of the bears and ordered that the bears be permanently placed at a USDA-approved facility.
 {¶ 2} Walker's legal wrangling with Xenia over the care and keeping of his bears and dogs has been long and fractious. We note that this is at least the fifth opinion that this court has rendered in this dispute. The history of the case is described in great detail in State v. Walker, 164 Ohio App.3d 114,2005-Ohio-5592, 841 N.E.2d 376 ("Walker IV"), and we will not recount that history at length herein. Generally, however, the issues have related to Walker's keeping of bears and dogs on his property, the removal of the bears by the county, Walker's attempts to get the bears back or, at the very least, to keep them from being destroyed, and the proper allocation of the costs associated with caring for the bears during the pendency of these proceedings.
 {¶ 3} The following facts are relevant to this appeal. In February 2004, the trial court ordered Walker to remove the bears from his property within fourteen days following an incident in which three bears had been loose on the roadway. Walker had previously been cited with failure to confine dogs on his property, and his sentence had been suspended on the condition that he have no further violations for five years. The court ordered the removal of the bears in connection with Walker's prior conviction and suspended sentence; he was not charged with an offense related to the bears.
 {¶ 4} Walker did remove the bears to the property of another individual, but they again escaped and were seized a short time later by Greene County Animal Control. They remained under the county's care thereafter. By February 2005, the cost to the county of caring for the bears was in excess of $32,000. The trial court has repeatedly ordered Walker to pay these costs. One such order was entered in early February 2005. Walker appealed from that decision on February 15, 2005 [Walker IV].
 {¶ 5} On February 25, 2005, Walker filed a "Notice of Replevin Action and Petition for Habeas Corpus; Motion to Set Aside Conviction." As discussed supra, the trial court overruled the motion on March 3, 2005. It then held a review hearing on March 11, 2005, with the apparent purpose of determining whether Walker had complied with its prior order to pay $32,127 by February 28. Walker had not paid, and the court ordered that the bears be permanently placed at a facility to be determined. The March 3 and March 11 decisions are the subject of this appeal. Understandably, however, many of the issues raised herein overlap with the issues raised in Walker IV, which was decided in October 2005. In fact, the ten assignments of error herein are identical to the assignments raised in Walker IV, and all but one were decided in that case. As such, we will rely on that case extensively.
 {¶ 6} In his first assignment of error, Walker claims that the trial court exceeded its authority in ordering him to pay restitution to the county for the care of the bears. Similarly, in assignments of error four, five, and six, Walker argues that the seizure of the bears amounted to an in rem forfeiture which was not authorized by statute and an excessive fine under the Eighth Amendment, and that the court's procedures violated his due process rights. In Walker IV, we sustained these assignments of error. With respect to restitution, we stated that "Walker's failure to confine a dog [the crime for which he had been convicted and sentenced] did not cause any property damage or personal injury to anyone. Accordingly, the trial court did not have the authority to order Walker to pay restitution for the upkeep and care of animals that were not the subject of the criminal charge." Id. at ¶ 48. We also observed that the state did not resort to any statutory forfeiture procedures, and we held that "neither a court nor the state can simply decide on its own to confiscate an individual's property, without affording the individual due process of law." Id. at ¶ 92. We concluded that the trial court had denied Walker his due process rights insofar as it had never held an evidentiary hearing on the key factual issues in the case. "[T]he judge merely held various `review' hearings, at which she made statements about events that happened outside court and about which no testimony or evidence was presented. The judge also did not give Walker an opportunity to examine witnesses or to present his own evidence. Then, after making her own observations of `fact,' the judge issued decisions about what would be done with the bears." Id. at ¶ 60. Based on the above conclusions, we further found Walker's third, eighth, and ninth assignments of error to be moot. We also overruled the second and tenth assignments of error. In accordance with WalkerIV, we reach the same dispositions in this appeal.
 {¶ 7} The only issue presented in this appeal that was not expressly decided in Walker IV is the seventh assignment of error, in which he argued then and argues now that the trial court erred by disposing of his property — the bears — contrary to the provisions set forth in R.C. 2329.01 et seq. and R.C.2933.41 et seq. These statutes deal with property subject to levy and sale and disposition of property held by a law enforcement agency. Walker claims that the court "deprived [him] of the right to repossess his property or have any proceeds applied from its sale to his fines/restitution." Because we have reversed the restitution order, the argument is moot in that respect. Moreover, on further examination, we are of the view that we did implicitly, if not expressly, resolve this assignment of error in the previous appeal.
 {¶ 8} In Walker IV, we observed that the allowable sanctions under R.C. 955.22 and R.C. 955.99 for failure to confine a dog — the offense of which Walker was convicted — include fines up to $250 and imprisonment up to thirty days. R.C.955.99 also permits the court to order the offender to personally supervise the dog, to cause the dog to complete dog obedience training, or both. It allows for destruction of vicious dogs, but only after due process has been applied. R.C. 955.99 does not contemplate the forfeiture of animals. As such, we concluded that the trial court could not have lawfully ordered the forfeiture of Walker's bears in conjunction with his conviction for failure to confine dogs. Even as a condition of probation, forfeiture of the bears would not have been appropriate because it "lack[ed] sufficient relationship to the crime for which [Walker] was convicted." Id. at ¶ 79. Further, no violation of the terms of Walker's probation was ever established. See id. at ¶ 81-82.
 {¶ 9} We also discussed at length in Walker IV some statutory provisions under which animals can be seized and/or forfeited. For example, R.C. 1717.09 provides for such measures in cases involving cruelty to animals, id. at ¶ 64-65, and R.C.1311.48 permits a humane society to obtain a possessory lien for the care of animals where neglect has been shown, id. at ¶ 85. These statutes did not apply in this case, however. We concluded that:
 {¶ 10} "[A] key concept in forfeiture is the use of statutory authority. In other words, some type of authority must exist in order for the state to seize an individual's property. As we mentioned, some Ohio statutes do allow seizure or forfeiture of animals. Other statutes in Ohio specifically provide for forfeiture of property. However, the state did not resort to any statutory procedures. The point is that neither a court nor the state can simply decide on its own to confiscate an individual's property, without affording the individual due process of law." Id. at ¶ 92.
 {¶ 11} There is no question that Walker has been denied his due process rights in the trial court. As we observed in WalkerIV:
 {¶ 12} "[T]he original condition under which Walker's sentence was suspended was that he not possess animals. This condition was then also suspended, contingent on Walker's continued cooperation. When the trial court found that a bear had escaped confinement from Walker's premises, the court ordered Walker to remove the bears. The fact of an escape does not necessarily indicate that Walker failed to cooperate, and the trial court never held an evidentiary hearing on this issue. Furthermore, Walker did cooperate with the court order by removing the bears and placing them on the property of Todd Bell.
 {¶ 13} "Subsequently, a bear escaped confinement at Bell's premises. We do not know how the escape occurred, or why, or even if Walker had anything to do with it — because there is noevidence in the record. Instead of holding a probation revocation hearing and issuing appropriate orders after providing Walker with due process, the trial court held a number of `review' hearings, at which the court did little more than discuss its thoughts and opinions on matters that were outside the record." (Emphasis sic.) Id. at ¶ 81-82.
 {¶ 14} The court then imposed an unlawful sanction — the forfeiture of the bears.
 {¶ 15} In addressing the seventh assignment of error inWalker IV, we noted that, at the time the appeal was filed, the trial court had not yet physically disposed of the bears. Because it was unclear whether the bears had, in fact, been sold or given away, we overruled the assignment related to the disposal of the bears as premature. We find ourselves in a somewhat similar procedural posture here: the fate of the bears is not clear, although the trial court did order the custodian of the bears "to find permanent placement for these bears in a USDA-approved zoological facility or some other USDA-approved facility" in its March 11, 2005 judgment. The court further stated: "[i]n light of the fact that USDA-approved facilities do not need these bears, it will be impossible to sell these bears to those facilities. The Court is merely asking for their help in providing permanent safe and humane placement for the animals."
 {¶ 16} Although the ultimate fate of the bears is still not clear, we have thoroughly addressed the lack of statutory authority for a forfeiture of the bears in this case and the lack of due process in the trial court's proceedings. As such, we can only conclude that any disposition of the animals at this point would be improper and subject to reversal on appeal. Under these unique circumstances, no worthwhile purpose can be served by waiting to learn the fate of the bears before ruling on the propriety of the trial court's actions. Although we previously upheld an order requiring Walker to remove the bears from his property, a removal is quite different from a confiscation or forfeiture. Id. at ¶ 79. "In the first situation, an individual retains dominion over his property, even though he has to move the property from its current location; in the second situation, the individual is stripped completely of control." Id.
 {¶ 17} The trial court lacked authority to order a forfeiture of the bears pursuant to the criminal statute under which Walker was convicted. As such, its judgment to that effect must be reversed. The state has not sought forfeiture under any other statute, nor has it brought any criminal charges related to Walker's possession or treatment of the bears. When and if it does so, the trial court must be mindful of the due process requirements of such proceedings.
 {¶ 18} The seventh assignment of error is sustained.
 {¶ 19} The judgments of the trial court are reversed.
Brogan, J. and Fain, J., concur.