OHIO STATE BAR ASSOCIATION v. GOLDIE.

[Cite as *Ohio State Bar Assn. v. Goldie,*
119 Ohio St.3d 428, 2008-Ohio-4606.]

(No. 2008–0774—Submitted May 21, 2008—Decided September 18, 2008.)

## Per Curiam.

{¶ 1} Respondent, Susan L. Goldie of Xenia, Ohio, Attorney Registration No. 0018439, was admitted to the practice of law in Ohio in 1978. She formerly served as judge of the Xenia Municipal Court, stepping down in December 2007. In *Ohio State Bar Assn. v. Goldie,* 107 Ohio St.3d 201, 2005-Ohio-6186, 837 N.E.2d 782, we publicly reprimanded respondent in her judicial capacity for attempting to preside in a case after she had been removed from the case by judicial order.

{¶ 2} This case raises additional claims of judicial misconduct. The Board of Commissioners on Grievances and Discipline recommends that we issue another public reprimand to respondent, this time for three separate violations of Canon 3(B)(2) of the Code of Judicial Conduct, which requires a judge to be faithful to the law and maintain professional competence in it. We accept the board's findings of judicial misconduct and recommendation.

{¶ 3} Relator, Ohio State Bar Association, charged that respondent violated Canon 3(B)(2), among others, by denying three defendants due process in flagrant disregard of the law. Pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), a panel of the board considered the case on the parties' consent-to-discipline agreement, found the cited misconduct, and recommended a public reprimand. The board accepted the panel's findings and recommendation.

### Misconduct

### A. The Walker Case

{¶ 4} David Walker was convicted in 2003 of multiple offenses stemming from his failure to properly confine or control dogs in his care. In sentencing Walker on one of these convictions, respondent ordered Walker to surrender two dogs and serve a 30–day jail sentence, to be followed by a five-year period during which Walker would be unable to keep animals on the property where he was living. Respondent suspended both parts of the sentence, however, on the condition that Walker "cooperate" while on probation with local animal-control authorities.

{¶ 5} Thereafter, respondent presided over a series of animal-control proceedings against Walker, recounted in detail by the Court of Appeals for Greene

County in *State v. Walker*, 164 Ohio App.3d 114, 2005-Ohio-5592, 841 N.E.2d 376. But in this disciplinary case, the parties focus on only one of respondent's rulings against Walker—an order directing him to pay restitution for the care and feeding of some bears that another judge had earlier ordered to be seized from his premises.

{¶ 6} In mid-February 2004, three of seven bears in Walker's charge escaped from their enclosures and had to be captured by law-enforcement officers. The day after the escape, respondent summarily ordered Walker to remove the bears from the premises within 14 days. Walker complied with respondent's order by moving the bears to property rented by Todd and Tammy Bell.

{¶ 7} In early March 2004, however, some of the Walker bears escaped again. A visiting judge immediately ordered the bears seized and placed in the custody of Greene County Animal Control. Within days and without providing Walker prior notice or the opportunity to present his defense, respondent ordered Walker and Bell to pay the county's expenses incurred in transporting, feeding, and otherwise caring for the bears.

{¶ 8} By February 8, 2005, the cost of the bears' upkeep had reached $32,127. Again without providing Walker prior notice or an opportunity to present his defense, respondent ordered Walker to pay that amount in full by the end of the month. Respondent further ordered that if Walker did not pay the ordered restitution, the bears would be forfeited and placed elsewhere.

{¶ 9} Walker appealed. In October 2005, the Greene County Court of Appeals reversed respondent's order, in part by finding that she had had no authority to order restitution. The court of appeals held that because Walker had not been convicted of any criminal conduct relating to the wayward bears, respondent could not, on the authority of a statute allowing restitution for property damage caused by a crime, order him to pay for the bears' care in custody. The court went on to criticize respondent's failure to afford Walker even the pretense of due process:

{¶ 10} "In our opinion, the state's arguments are contradictory and confusing. The state's difficulty in clearly articulating a position may stem from the trial judge's failure to comply with rudimentary due process requirements. As we mentioned, the trial judge never held any type of evidentiary hearing after ordering Walker to remove the bears from his property. Instead, the judge merely held various 'review' hearings, at which she made statements about events that happened outside court and about which no testimony or evidence was presented. The judge also did not give Walker an opportunity to examine witnesses or to present his own evidence. Then, after making her own observations of 'fact,' the judge issued decisions about what would be done with the bears." *Walker*, 164 Ohio App.3d 114, 2005-Ohio-5592, 841 N.E.2d 376, at ¶ 60.

{¶ 11} Elaborating on this criticism, the court continued:

{¶ 12} "We do not know how the escape [from the Bell property] occurred, or why, or even if Walker had anything to do with it—*because there is no evidence in the record.* Instead of holding a probation revocation hearing and issuing appropriate orders after providing Walker with due process, the trial court held a number of 'review' hearings, at which the court did little more than discuss its thoughts and opinions on matters that were outside the record." *Walker* at ¶ 82.

{¶ 13} The parties stipulated that respondent had abused her discretion and violated Canon 3(B)(2) by ordering the forfeiture of Walker's bears unless he paid for their confiscation and care. We therefore find this judicial misconduct.

## B. The Webb Case

{¶ 14} In early August 2006, respondent held a contempt hearing for Howard Webb. Webb had been arrested and charged with contempt of court, according to the parties' stipulations, "for repeatedly violating previous agreements to pay fines and court costs in nine criminal and traffic cases in the Xenia Municipal Court." As to the contempt proceedings, the parties further stipulated:

{¶ 15} "At the hearing, Judge Goldie sentenced Webb to 30 days in jail for each 'contempt.' The sentences were ordered served consecutively, which resulted in 270 days of jail time. At the time, Webb claimed to be employed as a dishwasher earning $7 per hour. Webb appealed the sentences, which [were] later voluntarily dismissed after Webb was released from custody.

{¶ 16} "In two opinions in 2005, the Second District Court of Appeals ruled that, in order to avoid jailing a person for non-payment of court costs, a sentencing court must issue an order separating the amount of the fines from the amount of the court costs. Judge Goldie failed to follow the law by not making the necessary separation.

{¶ 17} "Ohio Revised Code Section 2947.14 provides the procedure which must be followed before a person may be jailed for not paying a fine imposed by a sentencing court. The statute requires that a hearing be held at which the offender may be represented by counsel. The purpose of the hearing is to determine the offender's financial ability to pay the fine. Findings of fact indicating the offender's income, assets and debts and the offender's ability to pay must be set forth in a judgment entry. If the court finds that the offender has the ability to pay and fails to pay the fine, he may be held in contempt and an arrest warrant may be issued."

{¶ 18} Respondent concedes that she followed none of the procedures required to determine Webb's ability to pay assessed fines before sending him to jail. She also concedes that she "knowingly failed to follow the law" and that her failure violated Canon 3(B)(2). We therefore find this judicial misconduct.

*C. The Brandon Case*

{¶ 19} Anthony Brandon was convicted of vehicular manslaughter in violation of R.C. 2903.06(A)(4), a second-degree misdemeanor, after he lost control of his vehicle and caused the death of his young female passenger. He was sentenced to 90 days, suspended, in jail; five years of probation; and 500 hours of community service to be performed at Yellow Springs High School, where he and the victim had been schoolmates. Respondent later denied Brandon's request to perform his community service in Athens, Ohio.

{¶ 20} In *State v. Brandon,* Greene App. No. 2005–CA–117, 2006-Ohio-4930, 2006 WL 2709706, ¶ 6 (*"Brandon I"*), the Greene County Court of Appeals reversed. The court of appeals held that respondent had abused her discretion in denying Brandon's request for changing the terms of his sentence because she had offered no explanation for the denial in her order. That court also ordered respondent to reduce Brandon's 500 hours of community service to 200, the maximum allowed by statute for his conviction of a second-degree misdemeanor. Id. at ¶ 14.

{¶ 21} On remand in November 2006, respondent held a hearing because Brandon had not by that time paid the $1,000 fine ordered as part of his sentence. She learned at the hearing that Brandon was living out of state with his mother and not attending college in Athens as he had earlier represented and that he did not have a full-time job. Respondent found Brandon, who had appeared without counsel, in contempt and sentenced him to an unconditional 30 days in jail.

{¶ 22} On appeal of that order, the Greene County Court of Appeals again reversed, finding a denial of due process. *State v. Brandon,* Greene App. 06–CA–137, 2008-Ohio-403, 2008 WL 308455, ¶ 2 (*"Brandon II"*). The court held that in finding Brandon guilty of indirect criminal contempt, respondent had denied him his right to be represented by counsel. Moreover, by failing to advise Brandon of his right to counsel, the court held, respondent could not have obtained his knowing and voluntary waiver of this constitutional right. *Brandon II* at ¶ 13.

{¶ 23} Respondent concedes that she violated Brandon's due process rights. She also concedes that her knowing failure to comply with the law violated Canon 3(B)(2). We therefore find this judicial misconduct.

## Sanction

{¶ 24} In determining the appropriate sanction for respondent's violations of the Code of Judicial Conduct, we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent. *Disciplinary Counsel v. Sargeant,* 118

Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 28, citing *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609.

{¶ 25} We have already discussed how respondent's knowing disregard of constitutional and statutory rights breached duties to the judicial system and caused prejudice. As to similar cases, the parties stipulated to a public reprimand without citing any precedent in their consent-to-discipline agreement.

{¶ 26} We are aware of no authority compelling an actual or stayed suspension inasmuch as respondent is no longer on the bench and, for the most part, her ill-advised rulings were rectified on appeal. Moreover, though the public reprimand for her previous judicial failings is of some aggravating effect, see BCGD Proc.Reg. 10(B)(1)(a), respondent also did not act dishonestly or out of self-interest, readily conceded her wrongdoing, and submitted many letters recommending her character and reputation. BCGD Proc.Reg. 10(B)(2)(b) and (e). These mitigating factors, together with her departure from the bench, ensure that respondent will not engage in judicial misconduct again.

{¶ 27} We therefore publicly reprimand respondent for violating Canon 3(B)(2). Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., dissents.

---

**MOYER, C.J., dissenting.**

{¶ 28} I respectfully dissent. In view of the respondent's repeated acts of misconduct, I would reject the recommended sanction of a public reprimand and, pursuant to Gov.Bar R. V(8)(D), remand this cause to the Board of Commissioners on Grievances and Discipline for further proceedings. I would further order that these proceedings include consideration of an increased degree of discipline.

---

Edward M. Smith and Eugene P. Whetzel, Bar Counsel, for relator.

Montgomery, Rennie & Jonson and George D. Jonson, for respondent.