**[Cite as *Ratcliff v. Seitz*, 2014-Ohio-4412.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MIAMI COUNTY

DOUG RATCLIFF, et al.

       Plaintiff-Appellant

v.

KIMBERLY SEITZ, et al.

       Defendant-Appellee

Appellate Case No.    2014-CA-9

Trial Court Case Nos.   2012-CV-267
                         2013-CV-045

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 3rd day of October, 2014.

. . . . . . . . . . .

SCOTT A. KELLY, Atty. Reg. No. 0082280, 247 West Court Street, Sidney, Ohio 45365
      Attorney for Plaintiff-Appellant

DAVID P. WILLIAMSON, Atty. Reg. No. 0032614, THOMAS M. HESS, JR., Atty. Reg. No.
0089667, 400 PNC Center, 6 North Main Street, Dayton, Ohio 45402
      Attorneys for Defendant-Appellee
      Attorneys for Plaintiff-Appellee-Daniel Brauer, DVM

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Appellant, Doug Ratcliff, appeals from the judgment of the Miami County Court of Common Pleas granting summary judgment on various consolidated claims. As the plaintiff-appellant in Case No. 12 CV 267, Ratcliff appeals from the trial court's decision granting summary judgment in favor of various Miami Valley Bird Club members on Ratcliff's claims of conversion, unjust enrichment, fraudulent misrepresentation, and intentional infliction of emotional distress. As the defendant-appellant in Case No. 13 CV 045, Ratcliff appeals from the trial court's decision granting summary judgment in favor of Dr. Daniel Brauer on Ratcliff's counterclaim alleging a violation of the Consumer Sales Practices Act. For the reasons outlined below, the judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings. Further, portions of the appeal will be dismissed for lack of a final appealable order.

## Relevant Factual History

{¶ 2}    This appeal arises out of a series of events that occurred at a premises occupied by Doug Ratcliff at 4101 W. State Route 55, Troy, Ohio. Ratcliff was the owner of an unspecified number of exotic birds, which he kept in a separate house and barn located on the property. Due to carbon monoxide poisoning in the spring of 2011, Ratcliff's health deteriorated and it became difficult for him to care for the birds.

{¶ 3}    On August 1, 2011, Sharon Karns, a humane officer of the Miami County Humane Society, and Dr. Julie Peterson, a veterinarian, went to Ratcliff's residence to investigate a complaint regarding the living conditions of the birds on his property. Ratcliff allowed Karns

and Peterson to look at the house and barn where he kept the birds, which both women described as filthy and unacceptable. According to their deposition testimony, Karns and Peterson observed multiple dead bird carcasses, dirty water and feeding bowls, and a lot of excrement. They also noticed a stench of ammonia, poor air quality, and no air conditioning despite the warm August weather. In addition, many of the live birds were missing feathers and several of the birds were flying around free in the structure. Karns also observed birds with missing toes. Dr. Peterson and Karns claimed that the birds were neglected and not given proper attention.

{¶ 4} Due to the filthy and unacceptable living conditions, Karns issued a two-week notice for Ratcliff to clean and improve the space where he housed the birds. As part of the notice, Ratcliff was informed that the birds would be subject to an on-site impound, meaning that the birds would remain on Ratcliff's property, but that the Humane Society was responsible for making sure the birds were fed and watered every day. Karns could not remove the birds from the property because she had nowhere to house them. The notice also indicated that Ratcliff was prohibited from doing anything with the birds; however, Karns later stated that she had told Ratcliff that he could feed and water them.

{¶ 5} Karns and Peterson also advised Ratcliff that members of a local group, the Miami Valley Bird Club ("MVBC"), would help him feed and water the birds. Some members from the MVBC, including Kimberly Seitz, were at the property with Dr. Peterson and Karns. There is no dispute that Ratcliff initially gave the MVBC members permission to come to his property to help him feed and water the birds every other day. There is also no dispute that Ratcliff transferred ownership of four birds to the MVBC that day.

{¶ 6} The next day, August 2, 2011, Karns went to Ratcliff's property to check on the

birds and she saw that they had food and water. Thereafter, on the morning of August 3, 2011, members of the MVBC went to Ratcliff's property to check on the birds. Once there, MVBC member Kimberly Seitz asked Ratcliff to sign a written consent form stating that MVBC members were allowed to enter his property in order to feed and water the birds. Ratcliff does not dispute signing this form and giving permission for MVBC members to enter his property.

{¶ 7} The same day, Seitz presented a second form to Ratcliff for purposes of releasing additional birds to the MVBC. Ratcliff does not dispute signing the form for the release of additional birds, but claims that the form he signed did not state the specific number of birds that would be taken. According to Ratcliff, it was his understanding that only three birds were going to be taken that day for purposes of medical treatment. It was also Ratcliff's understanding that he was not giving up ownership of the three birds, and that he would pay for their care.

{¶ 8} Seitz, however, testified that prior to Ratcliff signing the release form, she wrote on the form that Ratcliff would be releasing ownership of "ten avian birds" to the MVBC. Seitz further claims that she read the form to Ratcliff and that he understood he was relinquishing ownership of the ten birds to the MVBC. Jim Tinnell, a MVBC member and vet tech at Dayton South Veterinary Clinic, also testified that Ratcliff gave the MVBC permission to take ten birds from his property and that Ratcliff understood the ownership of the ten birds would be transferred to the MVBC. After the ten birds were taken from Ratcliff's property, the MVBC transferred ownership of the birds to Dr. Daniel Brauer of Dayton South Veterinary Clinic. Dr. Brauer later billed Ratcliff for the veterinary services he performed on the birds.

{¶ 9} On August 4, 2011, Seitz returned to Ratcliff's property with other MVBC members, including Vernon and Sharon Schmidt. Seitz claims she obtained permission from

Ratcliff to check on the birds that day since he had previously said they could only come on the property every other day. According to Seitz, the Schmidts saw several sick birds and took four more of the birds while she was feeding and watering the others. It was Tinnell's understanding that the Schmidts had anonymously dropped off the birds to the Dayton South Veterinary Clinic.

{¶ 10} After Ratcliff noticed that more than three birds had been taken, he became upset and thereafter prohibited the MVBC from entering his property, as he believed the members were stealing his birds. Over the next month, Karns continued to monitor Ratcliff's remaining birds. Karns claims that while the cleanliness was improving, Ratcliff was still not feeding and watering the birds regularly. Accordingly, she and Ratcliff entered into a written agreement providing that the Humane Society would not press charges for animal cruelty if he released ownership of the remaining birds housed on his property. On September 6, 2011, Ratcliff signed the agreement releasing ownership of his birds.

**Course of Proceedings**

{¶ 11} Two cases were filed as a result of the foregoing facts. The first case, Case No. 13 CV 045, was originally filed in the Montgomery County Court of Common Pleas by Dr. Brauer, and the second case, Case No. 12 CV 267, was filed in the Miami County Court of Common Pleas by Ratcliff. On December 20, 2012, Case No. 13 CV 045 was transferred from Montgomery County to Miami County where it was then consolidated with Case No. 12 CV 267 for purposes of trial. The procedural history of each case is outlined below.

Case No. 13 CV 045

{¶ 12} With respect to Case No. 13 CV 045, on October 25, 2011, Dr. Brauer filed a

complaint that requested a declaratory judgment against Ratcliff finding that he, not Ratcliff, was the legal owner of the birds transferred to him by the MVBC. In response, Ratcliff filed counterclaims against Dr. Brauer alleging claims for: (1) conversion; (2) replevin; (3) a declaratory judgment finding that he is the rightful owner of the birds; (4) a declaratory judgment finding that he is not liable for the veterinary expenses; and (5) a claim for violations of the Consumer Sales Practices Act ("CSPA"), based on allegedly unfair, deceptive, and unconscionable sales practices.

{¶ 13} On September 7, 2012, Ratcliff filed a motion for summary judgment on his CSPA counterclaim, as well as his counterclaims requesting declaratory judgments finding him to be the rightful owner of the birds and not liable for the veterinary expenses. Dr. Brauer filed a memorandum in opposition to Ratcliff's motion, which included a request that the court grant summary judgment in his favor on the same claims.

{¶ 14} On October 10, 2013, the trial court issued a written decision granting summary judgment in favor of Dr. Brauer on the CSPA counterclaim and dismissed it entirely. However, the trial court denied summary judgment to either party on the declaratory judgment claims, finding that there was a genuine issue of material fact remaining as to whether Ratcliff actually transferred ownership of the birds in partial consideration for being exempt from the veterinary bills, as well as what birds were transferred by the release of ownership form.

{¶ 15} Several months later, on March 4, 2014, the parties filed a stipulated Civ.R. 41(A)(1) voluntary dismissal of only the claims that had not been adjudicated by summary judgment in an effort to create a final appealable order. The dismissal entry specifically stated that: "By this Stipulation Dismissal, the parties hereby dismiss, *without prejudice*, all claims

remaining in this matter that were not adjudicated by the Court's *Order Granting and Denying Motions and Other Requests for Summary Judgment*, filed October 19, 2013, and intend to thereby render that Order final and appealable." (Emphasis sic.) Ohio Rule 41(A) Stipulation of Dismissal (Mar. 4, 2014), Miami County Court of Common Pleas Case No. 13 CV 045, Docket No. 31, p. 2.

Case No. 12 CV 267

{¶ 16} With respect to Case No. 12 CV 267, on April 27, 2012, Ratcliff filed a complaint alleging that MVBC members Kimberly Seitz, Gary Tinnell, James Tinnell, Jennifer Woodard, and Vernon and Sharon Schmidt, were liable for: (1) conversion; (2) unjust enrichment; (3) fraudulent misrepresentation; and (4) intentional infliction of emotional distress as a result of removing his birds. In response, Seitz filed a counterclaim against Ratcliff alleging that he owed her reimbursement for her services in removing and caring for the birds. Ratcliff later dismissed all claims against Woodard. Thereafter, Ratcliff filed a partial motion for summary judgment regarding Seitz's counterclaim for reimbursement. The remaining MVBC defendants also filed a motion for summary judgment on all four of Ratcliff's claims.

{¶ 17} In its written decision of October 10, 2013, the trial court granted summary judgment in favor of the MVBC defendants on Ratcliff's four claims, finding that they lawfully took possession of the birds and were immune from liability under R.C. 1717.13. However, the trial court found a genuine issue of material fact remained as to who owned the birds following their removal from Ratcliff's property, as well as who was responsible for the expenses related to their care. Accordingly, the trial court denied summary judgment on Seitz's counterclaim for reimbursement. Following the trial court's decision, Seitz voluntarily dismissed her

counterclaim.

{¶ 18}   As a result of the voluntary dismissals in both Case Nos. 13 CV 045 and 12 CV 267, on March 5, 2014, the trial court issued a decision and entry stating that there were no remaining claims for relief in controversy between any of the parties in either case, and that an entry of final judgment is appropriate.   The trial court then entered a final judgment in favor of the MVBC defendants in Case No. 12 CV 267 and dismissed Ratcliff's claims in that case with prejudice.   Likewise, the trial court entered a final judgment in favor of Dr. Brauer on the CSPA claim in Case No. 13 CV 045, also dismissing that claim with prejudice.   The trial court included Civ.R. 54(B) certifications of a final appealable order in its entry.

{¶ 19}   Ratcliff now appeals from the March 5, 2014 decision and entry, raising two assignments of error for review.

### Assignment of Error No. I

{¶ 20}   Ratcliff's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT IN RATCLIFF'S FAVOR ON RATCLIFF'S FIFTH AND FOURTH CAUSES OF ACTION AGAINST DR. BRAUER AND ON KIMBERLY SEITZ'S COUNTERCLAIM.

{¶ 21}   Under this assignment of error, Ratcliff argues that the trial court erred in granting summary judgment in favor of Dr. Brauer on the CSPA claim and denying summary judgment on his claim requesting a declaratory judgment finding that he was not liable for Dr. Brauer's veterinary expenses.   He also claims the trial court erred in denying him summary

judgment on Seitz's counterclaim for reimbursement of expenses.

{¶ 22} As a preliminary matter, we note that Seitz voluntarily dismissed her only counterclaim against Ratcliff. "It is well-established that, ordinarily, when a plaintiff dismisses an action without prejudice, pursuant to Civ.R. 41(A), the parties are left as if no action had been brought." *Jackson v. Allstate Ins. Co.,* 2d Dist. Montgomery No. 20443, 2004-Ohio-5775, ¶ 24, citing *Denham v. New Carlisle*, 86 Ohio St.3d 594, 596, 716 N.E.2d 184 (1999). (Other citations omitted.) Because the current status is as if Seitz's counterclaim had never existed, any claim of error with respect to the counterclaim is unavailable. Accordingly, we decline to address this portion of Ratcliff's assignment of error.

{¶ 23} Ratcliff also voluntarily dismissed all his claims against Dr. Brauer, with the exception of the CSPA claim that was adjudicated via the trial court's decision on summary judgment. The parties admittedly dismissed the unadjudicated claims in order to obtain a final appealable order. In *Pattison v. W.W. Grainger, Inc.,* 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, the Supreme Court of Ohio stated the following regarding voluntary dismissal:

Civ.R. 41(A)(1) states that "a plaintiff, without order of court, may dismiss *all claims* asserted by that plaintiff against a defendant by * * * filing a notice of dismissal at any time before the commencement of trial." (Emphasis added.)
* * *

As recognized by the Eighth District Court of Appeals, other appellate districts faced with this question have found that dismissal of a single claim among others against the same defendant is not permitted by Civ.R. 41. These holdings have been based on the text of the rule itself, as well as the general

policy against piecemeal litigation. *See Borchers v. Winzeler Excavating* (Apr. 10, 1992), 2d Dist. No. 13297, 1992 WL 82681 ("In our view, Civ.R. 41(A)(1) creates a mechanism whereby a plaintiff may voluntarily dismiss his entire action, without prejudice. It does not provide for the dismissal, without prejudice, of part of a cause of action") (decided under former version of Civ.R. 41); *Savage v. Cody-Zeigler, Inc.*, 4th Dist. No. 06CA5, 2006-Ohio-2760, 2006 WL 1514273, ¶ 33 ("A plain reading of Civ.R. 41(A) reveals that it allows a plaintiff 'to dismiss all claims' asserted against a defendant, but contains no mechanism for the dismissal of a single claim" [emphasis sic]); *Kildow v. Home Town Improvements*, 5th Dist. No. CT2001-0057, 2002-Ohio-3824, 2002 WL 1729936, ¶ 11 ("We therefore hold that appellant's attempt to dismiss the remaining contract claims via Civ.R. 41(A)(1) was a nullity; hence said claims remain unadjudicated")*; Reagan v. Ranger Transp., Inc.* (1995), 104 Ohio App.3d 15, 18, 660 N.E.2d 1234 ("a party cannot dismiss claims pursuant to Civ.R. 41(A)(1)(a) because such rule permits only the dismissal of actions") (decided under former version of the rule); *Lewis v. J.E. Wiggins & Co.*, 10th Dist. Nos. 04AP-469, 04AP-544, and 04AP-668, 2004-Ohio-6724, 2004 WL 2895960, ¶ 17. Many of these opinions noted that the proper procedure for a plaintiff to dismiss fewer than all claims against a single defendant is to amend the complaint pursuant to Civ.R. 15(A). *E.g. Reagan* at 18, 660 N.E.2d 1234; *Kildow*; *Lewis, supra*.

Civ.R. 41(A) allows for a dismissal of all claims against particular defendants. The lower court's position regarding judicial economy and the need

to streamline cases suffers in that, were Civ.R. 41(A) to be used to dismiss fewer than all of the claims against a certain defendant, a plaintiff could create a final and appealable order as to one issue under Civ.R. 41(A) while still saving the dismissed claim to be refiled later.   To allow a partial Civ.R. 41(A) dismissal is potentially prejudicial to defendants. In cases in which all claims against a party are dismissed without prejudice, there still is the risk of the action being refiled, but the amount of potential litigation that a defendant is subjected to is the same. When an individual claim against a defendant is dismissed without prejudice, however, the defendant is forced to go through the appeal process and may perhaps still be subjected to the dismissed claim upon refiling. The defendant in that situation is vulnerable to an increased overall burden due to the Civ.R. 41 dismissal.

*Pattison* at ¶ 12, 19-20.  *Accord, Leonard v. Huntington Bancshares, Inc*., 10th Dist. Franklin No. 13AP-843, 2014-Ohio-2421, ¶ 15 (dismissing appeal where plaintiff dismissed some claims in an attempt to create final appealable order).

{¶ 24}  Because Ratcliff dismissed only a portion of his claims against Dr. Brauer, the Civ.R. 41(A)(1) holding in *Pattison* renders the dismissal a nullity, and all the dismissed claims remain pending.  *See, e.g., Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 09CA009573, 2010-Ohio-1352, ¶ 7 (finding voluntary dismissal was a nullity and claims remain pending as Civ.R. 41(A) does not permit a party to dismiss anything less than all claims against any one party);  *Patriot Outdoors, L.L.C. v. Strata Petroleum, Inc.*, 7th Dist. Monroe No. 12 MO 9, 2013-Ohio-2287, ¶ 20 (noting that where voluntary dismissal of chosen claims are held

ineffective, the claims that were voluntarily dismissed are revived). We note that while Dr. Brauer dismissed all of his claims against Ratcliff via the stipulated dismissal, Brauer's claims still remain pending, because Ratcliff's partial dismissal renders the entire stipulated dismissal null and void.

{¶ 25} Since the dismissed claims remain pending in the trial court, there is no final appealable order with respect to those claims. *See* R.C. 2505.02. Due to the lack of a final appealable order, we do not have jurisdiction to review errors concerning those claims. *See Kilroy v. Peters*, 2d Dist. Montgomery No. 24268, 2011-Ohio-3415, ¶ 13 ("If an order is not final and appealable, then we have no jurisdiction to review the matter and must dismiss the appeal"). Accordingly, we do not have jurisdiction to review whether the trial court correctly denied Ratcliff summary judgment on the declaratory judgment claim for veterinary expenses, as that is one of the claims still pending before the trial court.

{¶ 26} The CSPA claim, on the other hand, is different from Ratcliff's other claims against Dr. Brauer. The CSPA claim was not one of the claims dismissed by Ratcliff, and the trial court issued a final entry with Civ.R. 54(B) certification language when it rendered judgment in favor of Dr. Brauer on that claim. We note that *Pattison* states "that when a plaintiff has asserted multiple claims against one defendant, and some of those claims have been ruled upon but not converted into a final order through Civ.R. 54(B), the plaintiff may not create a final order by voluntarily dismissing pursuant to Civ.R. 41(A) the remaining claims against the same defendant." *Pattison,* 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126 at ¶ 1. This case is distinguishable from *Pattison*, as the trial court did attempt to issue a final appealable order through its inclusion Civ.R. 54(B) language.

**{¶ 27}** Civ.R. 54(B) provides that:

When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**{¶ 28}** While the trial court in this case used the required language found in Civ.R. 54(B), it has, nevertheless, been held that "the mere incantation of the required language does not turn an otherwise non-final order into a final appealable order." (Citations omitted.) *Noble v. Colwell*, 44 Ohio St.3d 92, 96, 540 N.E.2d 1381 (1989). *Accord Bell v. Turner*, 191 Ohio App.3d 49, 2010-Ohio-4506, ¶ 11 (4th Dist.) (finding the trial court's use of the "magic language" of Civ.R. 54(B) does not, by itself, convert a final order into a final appealable order). Instead, "[t]he order at issue must always fit into at least one of the * * * categories of final order set forth in R.C. 2505.02." (Citation omitted.) *Noble* at 96.

**{¶ 29}** In *Chef Italiano Corp. v. Kent State University*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989), the Supreme Court of Ohio stated that:

> [I]n a case which does not involve multiple parties or multiple claims, all the conditions (substantial right, determine the action, prevent a judgment) of R.C. 2505.02 must be met before the order becomes final and appealable. This is also true in a case which does not involve multiple parties but which does involve a number of claims or counts pled by the parties, and such claims or counts are so inextricably intertwined as to make the eventual relief sought the same even though the claims are pled separately. To such cases, Civ.R. 54(B) has no application.

*Id*. at 90, fn. 5. Furthermore:

> It has been observed that, notwithstanding a deferential standard to be used when considering the finality of an order containing Civ.R. 54(B) language, "courts of appeals have rejected trial courts' invocation of Rule 54(B), particularly when there is much overlap between the claims adjudicated and the claims that remain pending and where the court of appeals believes that the fractured appellate process is not in the interest of 'sound judicial administration.' " Painter & Pollis, Ohio Appellate Practice (2010-2011 Ed.), 50, Section 2:8. A trial court may abuse its discretion in certifying a Civ.R. 54(B) claim for appeal when the facts are intertwined with an unresolved counterclaim. *Harness v. D. Jamison & Assocs*. (June 25, 1997), 1st Dist. No. C960735, 1997 Ohio App. LEXIS 2719, *4, 1997 WL 346053 citing *Noble*, supra.

*Deutsche Bank Natl. Trust Co. v. Germano*, 11th Dist. Portage No. 2010-P-0081, 2011-Ohio-3122, ¶ 8.

**{¶ 30}** Accordingly, we must determine whether Ratcliff's unresolved counterclaims are intertwined or overlap with the CSPA claim in which summary judgment was granted in favor of Dr. Brauer. We note that Ratcliff's counterclaims against Dr. Brauer for conversion, replevin, and declaratory judgments on the ownership of the birds and veterinary expenses specifically concern the ownership of the birds and who is financially responsible for their veterinary expenses. The CSPA claim, however, is different in that it concerns the fact that Dr. Brauer sent Ratcliff a bill for veterinary services without having any communication with him or without contracting for the services. We conclude that this claim does not overlap to the point where it would be inappropriate to find that the trial court's decision on the CSPA claim amounts to a final appealable order. Accordingly, we will proceed to review whether the trial court erred in granting summary judgment on the CSPA claim.

**{¶ 31}** When reviewing whether a trial court properly granted summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." (Emphasis sic.) *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

**{¶ 32}** The trial court granted summary judgment in favor of Dr. Brauer on Ratcliff's CSPA claims under R.C. 1345.02 and R.C. 1345.03 because it found the interaction between

Ratcliff and Dr. Brauer did not qualify as a "consumer transaction." In order for there to be a violation of the CSPA under R.C. 1345.02, a supplier must "commit an unfair or deceptive act or practice in connection with a consumer transaction." For there to be a violation of the CSPA under R.C. 1345.03, a supplier must "commit an unconscionable act or practice in connection with a consumer transaction." Accordingly, a consumer transaction is a necessary component of the alleged CSPA violations.

{¶ 33} The definition of "consumer transaction" is:

a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. "Consumer transaction" does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers; transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.

R.C. 1345.01(A).

{¶ 34} "[T]o qualify as a consumer transaction, R .C. 1345.01(A) requires that the sale or service must be for personal, family, or household purposes." *Devine v. Calanni Ents., Inc.*, 8th Dist. Cuyahoga No. 90840, 2008-Ohio-5103, ¶ 11. Here, the services rendered by Dr. Brauer were not primarily for Ratcliff's personal, family, or household purposes, as the veterinary services were performed at the behest of the MVBC. Additionally, the definition of "consumer transaction" does not include "transactions between veterinarians and their patients that pertain to medical treatment." *See* R.C. 1345.01(A). Because the services at issue are not covered under the foregoing definition, we do not find that Dr. Brauer's medical treatment qualifies as a consumer transaction. As a result, the trial court did not err in awarding Dr. Brauer summary judgment on Ratcliff's CSPA claim, as a consumer transaction was a necessary element of the claim.

{¶ 35} For the foregoing reasons, Ratcliff's First Assignment of Error is overruled in part and dismissed in part for lack of a final appealable order.

### Assignment of Error No. II

{¶ 36} Ratcliff's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN THE FAVOR OF KIMBERLY SEITZ, JAMES TIMMELL, [sic] GARY TINNELL, SHARON SCHMIDT, AND VERNON SCHMIDT ON RATCLIFF'S CAUSES OF ACTION FOR CONVERSION, UNJUST ENRICHMENT, FRAUD, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

{¶ 37} Under this assignment of error, Ratcliff contends the trial court erred in granting

summary judgment in favor of the MVBC defendants on his claims for conversion, unjust enrichment, fraudulent misrepresentation, and intentional infliction of emotional distress. He claims the trial court incorrectly concluded that R.C. 1717.13 provided the MVBC defendants with immunity from those claims, as he contends a general issue of material fact existed as to whether R.C. 1717.13 applies to the facts of this case.

{¶ 38} The claims against the MVBC defendants do not suffer from the same final appealable order infirmities as Ratcliff's counterclaims against Dr. Brauer, because Seitz voluntarily dismissed her only claim against Ratcliff and left no claims pending. Accordingly, the trial court's decision, as it relates to this assignment of error, is in the position of a final appealable order that we have jurisdiction to review.

{¶ 39} The trial court rendered summary judgment in favor of the MVBC defendants on grounds that R.C. 1717.13 provided them immunity from Ratcliff's claims. R.C. 1717.13 is a statute that "allows any person to take possession of an animal to protect the animal from neglect." *State v. Walker*, 164 Ohio App.3d 114, 2005-Ohio-5592, 841 N.E.2d 376, ¶ 85 (2d Dist.). The statute states, in pertinent part, that:

> When, in order to protect any animal from neglect, it is necessary to take possession of it, any person may do so. When an animal is impounded or confined, and continues without necessary food, water, or proper attention for more than fifteen successive hours, any person may, as often as is necessary, enter any place in which the animal is impounded or confined and supply it with necessary food, water, and attention, so long as it remains there, or, if necessary or convenient, he may remove such animal; and he shall not be liable to an action for

such entry. In all cases the owner or custodian of such animal, if known to such person, immediately shall be notified by him of such action. If the owner or custodian is unknown to such person, and cannot with reasonable effort be ascertained by him, such animal shall be considered an estray and dealt with as such.

R.C. 1717.13.

{¶ 40} "This particular statute does require a showing of neglect prior to a lawful entry and seizure." (Citation omitted.) *Walker* at ¶ 85. "The first sentence provides a qualified immunity, which exempts a humanitarian's taking possession of an animal if, and only if, it can be shown at a post-seizure proceeding that the animal was, in fact, *neglected at the time it was seized, and if the owner was promptly notified of the seizure*." (Emphasis added.) (Citation omitted.) *State v. York*, 122 Ohio App.3d 226, 234, 701 N.E.2d 463 (11th Dist.1997). Additionally, R.C. 1717.13 "provides defenses to an action, in trespass or conversion, for instance, by the true owner of an animal against any person (a humanitarian) who takes it into possession." *Id*.

{¶ 41} In this case, there is overwhelming evidence that Ratcliff's birds were neglected prior to the Humane Society intervening. Both Dr. Peterson and Sharon Karns described the birds' living conditions as filthy and unacceptable, and they confirmed the birds had been neglected. As a result, Karns issued an on-site impound on August 1, 2011, which meant the birds would remain on Ratcliff's property, but that Karns would ensure they were fed and watered every day. Karns chose this course of action because she had nowhere to put the birds. Two days after the impound, Jim Tinnell took photographs showing that the birds were still

living in deplorable conditions. The photographs included unsettling images of bird carcasses rotting in cages and the filth the birds had been living in for a significant period of time. Tinnell, an experienced vet tech, also testified that he was concerned for the birds due to the house being extremely hot and he believed that ten of the birds needed medical treatment. Due to the ongoing poor conditions, a question of fact arises as to whether the birds were still in a state of neglect that authorized their removal pursuant to R.C. 1717.13 even after the Humane Society intervened.

{¶ 42} A genuine issue of material of fact also exists as to whether proper notice was given to Ratcliff regarding the removal of his birds, which is necessary for the immunity granted by R.C. 1717.13. *See York* at 234. Ratcliff claims that on August 3, 2011, the MVBC defendants notified him that they were going to take three birds and that he agreed. Seitz and Tinnell, however, claim that they notified Ratcliff that they were going to take ten birds and that he agreed. While there is a written contract signed by Ratcliff indicating that he was releasing "ten avian birds" to the MVBC, there is testimony in the record indicating that the form may have been blank when he signed it and filled in later. Seitz, claims otherwise; therefore, a genuine issue of material fact remains as to whether Ratcliff was immediately notified that an additional seven birds were going to be taken.

{¶ 43} With respect to the four additional birds taken on August 4, 2011, Seitz claimed that Ratcliff had previously given the MVBC discretion to take additional sick birds to the veterinarian. Ratcliff claims otherwise, and there is nothing in the record indicating that Ratcliff was given notice of these birds being removed. Therefore, a genuine issue of material fact remains as to whether the MVBC should have provided Ratcliff with the notice required under

R.C. 1717.13 or whether Ratcliff had simply granted them permission to take sick birds for treatment.

{¶ 44} As a result of the foregoing issues of fact, it is unclear whether the MVBC defendants had immunity under R.C. 1717.13. As a result, the trial court erred in granting the MVBC defendants summary judgment on the fraudulent misrepresentation and conversion claims. With respect to the conversion claim, there is a genuine issue of material fact as to whether the MVBC wrongfully converted the birds, as it is unclear whether the MVBC defendants were permitted to remove the birds under R.C. 1717.13 and/or whether they had an agreement with Ratcliff to remove the birds. With respect to the fraudulent misrepresentation claim, there is a genuine issue of material fact as to whether the MVBC misrepresented how many birds they were taking.

{¶ 45} The MVBC defendants claim that summary judgment on the conversion and fraud claims is appropriate because Ratcliff failed to present evidence of damages. Ratcliff's testimony indicates that his birds were kept as pets[1] and "[t]he law of Ohio regards a pet as the personal property of its owner." (Citation omitted.) *Ullmann v. Duffus*, 10th Dist. Franklin No. 05AP-299, 2005-Ohio-6060, ¶ 30. "Typically, damages for loss of personal property are limited to the difference between the property's fair market value before and immediately after the loss." (Citation omitted.) *Oberschlake v. Veterinary Assoc. Animal Hosp.*, 151 Ohio App.3d 741, 2003-Ohio-917, 785 N.E.2d 811, ¶ 9 (2d Dist.). The owner-opinion rule presumes that owners of personal or real property are "generally quite familiar with their property and its value," and

---

[1] *See* Doug Ratcliff Deposition Trans. (Apr. 4, 2013), p. 103 (Ratcliff claimed he had not sold a bird during the past three to five years, and that he was not planning on selling any of the birds that were in his possession).

are "permitted to testify on value by virtue of their ownership alone." (Citation omitted.) *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 625, 605 N.E.2d 936 (1992). Here, Ratcliff testified that the value of the birds that were allegedly wrongfully taken was between $15,600 to $19,800. *See* Doug Ratcliff Deposition Trans. (Apr. 4, 2013), p. 104-105, 107-108. Therefore, Ratcliff provided sufficient evidence of damages on these claims.

{¶ 46} Nevertheless, we conclude that there is no genuine issue of material fact remaining on Ratcliff's claims for unjust enrichment. To prevail on an unjust enrichment claim there must be: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the 'unjust enrichment' element)." (Citations omitted.) *Crawford v. Hawes*, 2013-Ohio-3173, 995 N.E.2d 966, ¶ 34 (2d Dist.). Here, the MVBC defendants did not retain a benefit from Ratcliff when they removed the birds from his property, as the MVBC defendants did not keep possession of the birds or sell them, but transferred them to Dr. Brauer. Without a benefit derived by the MVBC defendants, Ratcliff's unjust enrichment claim must fail, because the first element of the claim is not met.

{¶ 47} Likewise, we conclude there is no genuine issue of material fact remaining on Ratcliff's claim for intentional infliction of emotional distress. To succeed on a claim of intentional infliction of emotional distress it must be proven that: " '(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the

proximate cause of the plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.' " *Pathan v. Pathan*, 2d Dist. Montgomery No. 20926, 2006-Ohio-43, ¶ 32, quoting *Scroggins v. Bill Furst Florist and Greenhouse, Inc.*, 2d Dist. Montgomery No. 19519, 2004-Ohio-79, ¶ 19. (Other citation omitted.)

{¶ 48} Here, there is nothing in the record indicating that the MVBC defendants either intended to cause Ratcliff emotional distress or knew or should have known that removing the birds would result in serious emotional distress. Rather, the record indicates that the intention of the MVBC defendants was purely a humane effort to protect the birds and provide them with necessary care. In addition, even when viewing the evidence in a light most favorable to Ratcliff, it simply cannot be said that the MVBC defendants' conduct in removing the birds from his home is so extreme and outrageous as to go beyond all possible bounds of decency and would be seen as intolerable by community standards. Again, the record plainly reveals that MVBC defendants' conduct was a humane effort to get the birds in a place that was safer and healthier.

{¶ 49} For the foregoing reasons, we conclude the trial court correctly granted summary judgment in favor of the MVBC defendants on Ratcliff's claims for unjust enrichment and intentional infliction of emotional distress, but that genuine issues of material fact remain as to whether the MVBC defendants fraudulently misrepresented how many birds they were taking and whether their conduct in taking the birds amounts to conversion.

{¶ 50} Accordingly, Ratcliff's Second Assignment of Error is overruled in part and sustained in part.

## Conclusion

{¶ 51}   The trial court's decision granting summary judgment in favor of Dr. Brauer on the CSPA claim in Case No. 13 CV 045 is affirmed.   The trial court's decision granting summary judgment in favor of the MVBC defendants on the unjust enrichment and intentional infliction of emotional distress claims in Case No. 12 CV 267 is also affirmed.   However, the trial court's decision granting summary judgment on Ratcliff's claims for conversion and fraudulent misrepresentation in Case No. 12 CV 267 is reversed and remanded for further proceedings.   Also, the portion of Ratcliff's First Assignment of Error challenging the trial court's decision denying summary judgment on Seitz's counterclaim and his declaratory judgment claim concerning veterinary expenses is dismissed for lack of a final appealable order.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.

Copies mailed to:

Scott A. Kelly
David P. Williamson
Thomas M. Hess, Jr.
Hon. Christopher Gee