[Cite as *State v. Norris*, 2020-Ohio-764.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

IVAN NORRIS, JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 NO 0467**

---

Criminal Appeal from the
County Court of Noble County, Ohio
Case No. 18 CR B 194ABCD

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Kelly A. Riddle,* Noble County Prosecutor*,* and *Atty. Jamie Riley Pointer,* Assistant Prosecutor, 150 Courthouse, Caldwell, Ohio 43724, for Plaintiff-Appellee and

*Atty. Scott Essad,* 721 Boardman-Poland Road, Suite 201, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated:  February 26, 2020

_____

**D'APOLITO, J.**

{¶1}   Appellant Ivan Norris appeals the terms of his community control imposed by the County Court of Noble County following his jury conviction for three counts of animals running at large, in violation of R.C. 951.02, a misdemeanor of the fourth degree; as well as his conviction for one count of resisting arrest, in violation of R.C. 2921.33, a misdemeanor of the second degree.  In his first assignment of error, Appellant argues that the trial court did not have the statutory authority to prohibit him from keeping livestock on property under his ownership or control as a term of his community control.  In his second assignment of error, Appellant challenges both the sufficiency and weight of the evidence supporting his conviction for resisting arrest.  For the following reasons, the terms of community control imposed by the trial court and Appellant's conviction for resisting arrest are affirmed.

## FACTS

{¶2}   Appellant was charged with three counts of animals running at large as a consequence of events occurring on June 4, October 18, and November 7, 2018. Appellant's elderly and infirm mother, Pearl Norris, resided on the property at issue in this appeal ("Norris property").

{¶3}   On June 4, 2018, Noble County Sheriff's Deputy Brandon Stokes received complaints from two individuals, who resided on neighboring properties, that cattle from the Norris property were wandering in the neighborhood. Deputy Stokes contacted Appellant regarding the complaints.

{¶4}   On October 18, 2018, Deputy Stokes responded to complaints that the cattle were on neighboring properties and had, in the recent past, consumed garden vegetables, left holes in the ground, defecated, and caused structural damage to a brick bin.  One neighbor reported that the path to his basketball court had become impassible. Another neighbor, who cared for children in her home, reported that the children were reluctant to play in the yard for fear of the cows.

Case No. 19 NO 0467

**{¶5}** On the morning of November 7, 2018, the Noble County Sheriff's Office received complaints that cattle from the Norris property were roaming through the neighborhood. At approximately 9:00 a.m., Noble County Sheriff's Deputy Sergeant Robert Pointer arrived at the Norris property, where he discovered that the gate was open, five cows were outside of the fenced area, and one was in the roadway. During his investigation of the scene, Sergeant Pointer examined a make-shift portion of the fence surrounding the Norris property, which was made of pallets.

**{¶6}** Tina Tucker, a resident of one of the neighboring properties, approached Sergeant Pointer at the foot of the driveway and informed him that that she regularly returned cattle to the Norris property by wrangling them with her four-wheeler. She further explained that Appellant, who resided in Cleveland, Ohio, visited the property roughly every four days. When no one answered the door, Sergeant Pointer learned through some investigation that Pearl was no longer residing in the home because she had been hospitalized in Cleveland, Ohio.

**{¶7}** At approximately 3:00 p.m. that same day, Sergeant Pointer was informed that Appellant was present at the Norris property. Sergeant Pointer returned to the property to serve three criminal complaints on Appellant for permitting animals to roam at large on June 4, October 18, and November 7, 2018.

**{¶8}** When he arrived, Sergeant Pointer saw a black sedan in the driveway, and Appellant walking the fence line. The gate was closed. Noble County Sheriff's Deputy Jamie Myers arrived at the scene at approximately 4:00 p.m. The two officers called out to Appellant as he walked from the fence line to the passenger side of the sedan in the driveway.

**{¶9}** After the officers entered the gate, Appellant yelled for them to close the gate behind them, then turned away in what they perceived to be an effort to avoid speaking with them. However, the officers confronted Appellant then asked him to accompany them to the cruiser in order to provide him with copies of the criminal complaints. Appellant declined. As a consequence, Sergeant Pointer informed Appellant that he was under arrest.

**{¶10}** Appellant became angry and announced that he "was not * * * going to jail." Appellant was holding several metal clothes hangers that were "kinda flattened out."

Deputy Myers surmised that Appellant had been using the coat hangers to reinforce the fence, however, both deputies recognized that the coat hangers could be used as a weapon. (Trial Tr., p. 147-149.)

{¶11} Sergeant Pointer testified that he drew his taser hoping that the show of force would cause Appellant to submit to the arrest. Instead, Appellant ran toward the sedan. Pointer yelled "stop," but Appellant did not comply. As a consequence, Sergeant Pointer deployed his taser, which struck Appellant's jacket but did not incapacitate him.

{¶12} When Appellant reached the sedan, roughly twenty feet from where his confrontation with the officers began, Appellant reached into the window of the driver side door. (*Id.*, p. 150.) Fearing that Appellant was reaching for a weapon, the officers took Appellant to the ground. While on the ground, Appellant continued to struggle, refusing to put his hands behind his back, until the deputies wrestled his hands behind his back and handcuffed him. (*Id.*, p. 169.)

{¶13} Appellant was tried by a jury and convicted of all three counts of animals running at large, as well as resisting arrest. The trial court sentenced Appellant to the maximum sentence and fine – 30 days and $250.00 – on the first two convictions for animals running at large to run consecutively, then suspended the sentences and placed Appellant on five years of probation. The terms of Appellant's probation read, in their entirety:

> (1) That the Defendant shall not own, keep, harbor or permit any cattle, or any other type of animal(s) that are considered livestock, upon any property that the Defendant has any ownership or control over, and that includes the property referred to as "The Norris Property" during the trial herein;
>
> (2) That any livestock currently upon the property referred to as "The Norris Property" is to be removed within twenty-one (21) days from today's date; and
>
> (3) That there are to be no cattle or live stock [sic] running at large that are presently occupying "The Norris Property."

(2/26/2019 Sent. Entry, p. 2.)

Case No. 19 NO 0467

{¶14} Although not germane to this appeal, the trial court imposed no jail term for the third conviction for animals running at large, only a fine of $250.00 to run consecutively to the convictions for the first two counts. The trial court imposed a sixty-seven day jail sentence and a fine of $250.00 for the resisting arrest conviction, but suspended sixty days based on the condition that Appellant appear at the Noble County Jail on April 1, 2019 at 8 a.m. to serve his sentence. Appellant's sentence was stayed by the trial court pending the resolution of this appeal.

## ASSIGNMENT OF ERROR NO. 1

**TAKING AWAY A PERSON'S LIVESTOCK, OR RIGHT TO OWN LIVESTOCK IN THE FUTURE, IS NOT ONE OF THE PUNISHMENTS A COURT CAN IMPOSE FOR A VIOLATION OF ORC § 951.02 – WHICH IS ONLY A FOURTH DEGREE MISDEMEANOR.**

{¶15} R.C. 951.02, captioned "Animals not to be permitted to run at large," reads, in its entirety:

> No person, who is the owner or keeper of horses, mules, cattle, bison, sheep, goats, swine, llamas, alpacas, or poultry, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land, or cause the animals to be herded, kept, or detained for the purpose of grazing on premises other than those owned or lawfully occupied by the owner or keeper of the animals.

{¶16} R.C. 951.99 reads, in its entirety, "Whoever recklessly violates section 951.02 of the Revised Code is guilty of a misdemeanor of the fourth degree." The maximum jail sentence for a fourth-degree misdemeanor is thirty days and the maximum fine is $250.00. See R.C. 2929.24, 2929.28. Unlike Chapter 959 of the Revised Code, captioned "Cruelty to Animals," Chapter 951, captioned "Animals Running at Large; Strays," contains no forfeiture provision.

{¶17} An appellate court reviews a misdemeanor sentence for abuse of discretion. *State v. Tribble*, 7th Dist. Mahoning No. 16 MA 0009, 2017-Ohio-4425, ¶ 24; R.C.

2929.22. An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶18}** In his first assignment of error, Appellant contends that the trial court was without authority to confiscate the livestock on the Norris property for the commission of a fourth degree felony. He further contends that the forfeiture of the cattle was without due process and constitutes cruel and unusual punishment.

**{¶19}** R.C. 2929.25, captioned "Misdemeanor community control sanctions," reads, in relevant part:

> The sentencing court shall require as a condition of any community control sanction that the offender abide by the law and not leave the state without the permission of the court or the offender's probation officer. *In the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior, the court may impose additional requirements on the offender.* The offender's compliance with the additional requirements also shall be a condition of the community control sanction imposed upon the offender.

R.C. 2929.25(C)(2) (Emphasis added).

**{¶20}** R.C. 2929.27, captioned "Nonresidential sanction where jail term not mandatory," reads, in relevant part:

> In addition to the sanctions authorized under division (A) of this section, the court imposing a sentence for a misdemeanor, other than a minor misdemeanor, upon an offender who is not required to serve a mandatory jail term *may impose any other sanction that is intended to discourage the offender* or other persons *from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing.*

R.C. 2929.27(C) (Emphasis added).

**{¶21}** In determining whether a condition of probation is related to the interests of doing justice, rehabilitating the offender, and insuring his good behavior, courts must consider whether the condition: (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation. *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990).

**{¶22}** In *City of Portsmouth v. Pub. Utilities Commission*, 108 Ohio St. 272, 140 N.E. 604, 606 (1923), the Ohio Supreme Court observed that "[t]he basic meaning of the word 'confiscate,' as defined by the lexicographers, is property that is seized and appropriated by the government to the public use." *Id.* at 276. The Court further observed that the term "carries with it the idea of forfeiture to the public treasury or appropriation to public use." *Id.* at 276-77. The terms of Appellant's community control do not involve an appropriation of the cattle to public use.

**{¶23}** We have recognized that the criminal forfeiture of property in Ohio is a form of punishment and is considered a fine, subject to the excessive fines prohibition in the Eighth Amendment to the U.S. Constitution and Article 1, Section 9 of the Ohio Constitution. *State v. Wolfe*, 7th Dist. Belmont No. 97 BA 37, 2000 WL 875338, *1, citing *State v. Hill*, 70 Ohio St.3d 25, 34, 635 N.E.2d 1248 (1994). However, Appellant will not lose the value of the livestock as a result of the terms of his community control. He may relocate the livestock to property in Noble County that is not under his ownership or control, transport the livestock to another county, or sell the livestock, thereby receiving equivalent value. Moreover, he may lease the Norris property, or otherwise cede control of the property to another party, which would allow the other party to keep livestock on the Norris Property.

**{¶24}** Appellant cites *State v. Walker*, 164 Ohio App.3d 114, 2005-Ohio-5592, 841 N.E.2d 376 (2005)("*Walker* 2005") for the proposition that the Second District reversed a trial court decision removing bears from Walker's property and requiring him to pay for their maintenance by the state. However, a review of the two appeals preceding *Walker* 2005 actually supports the conclusion that the terms of community control in this case are neither contrary to law nor an abuse of discretion.

**{¶25}** Walker was originally convicted of a fourth-degree misdemeanor based on his failure to confine his co-tenant's dog. The trial court imposed a jail sentence and fine, then suspended the sentence on the conditions that the co-tenant's two dogs be surrendered to Animal Control, and that Walker incur no further violations for five years. A third condition, that Walker keep no additional animals at his residence, was stayed based upon the second condition that he incur no further violations for five years.

**{¶26}** In his direct appeal, Walker challenged the third condition, but the Second District held that R.C. 2929.51(A)(2) authorized the trial court to suspend Walker's sentence upon any appropriate conditions. The Second District reasoned that "[r]estricting Walker to the animals he currently kept on the premises was well within the discretion granted by the statute." *State v. Walker*, 2nd Dist. Greene No. 2003 CA 93, 2004-Ohio-7258, ¶ 21.

**{¶27}** In Walker's second appeal, he challenged a post-sentence entry adding a fourth condition of his probation, that is, the removal of bears from his property. The additional condition was imposed by the trial court after several bears escaped from Walker's property. Walker argued that the new condition was an abuse of discretion.

**{¶28}** The Second District applied the *Jones* test and affirmed the terms of probation reasoning:

> Walker has demonstrated difficulty keeping the animals on his property restrained. The removal order ought to impress upon him that keeping his animals confined is a responsibility he must take seriously. (Prong 1). Although the escapees this time are bears and not dogs, the problem is the same. Animals that must be confined are getting loose. The removal order is certainly related to the failure to confine a dog offense for which Walker is on probation. (Prong 2). Finally, future criminality is a genuine possibility, if not a probability, should the bears again leave home. The State suggests disorderly conduct and failure to report the escape of certain animals as possible offenses which the order might prevent. We can imagine disorderly conduct as proscribed by R.C. 2917.11(A)(4)(5) and failure to report as required by R.C. 2927.21(A) as possibilities should Walker retain the bears. (Prong 3).

Case No. 19 NO 0467

*State v. Walker*, 2nd Dist. Greene No. 2004 CA 16, 2004-Ohio-7252, ¶ 23.

**{¶29}** Although Walker removed the bears to the property of another individual, the bears were ultimately seized by Animal Control after they escaped from confinement a second time. *Walker* 2005 challenged an entry of the trial court providing that the bears would not be returned to Walker. Appellant reliance on *Walker* 2005 is misplaced because the case stands for the proposition that a trial court has no authority to order forfeiture under R.C. 955.99, which governs the keeping of dogs. However, in reaching this conclusion, the Second District specifically recognized the distinction between an order directing an individual to remove an animal from his property (Walker's second appeal) and an order confiscating an animal (*Walker* 2005). The Second District wrote:

> Furthermore, even if forfeiture had been ordered as a condition of probation, it would not have been appropriate because the penalty statutes for failing to confine dogs do not even mention forfeiture as a possibility. Forfeiture, therefore, lacks sufficient relationship to the crime for which the defendant was convicted. *Jones*, 49 Ohio St.3d at 53, 550 N.E.2d 469. We are aware that we previously upheld an order requiring Walker to remove the bears from his property. However, a removal order is quite different from confiscating property. In the first situation, an individual retains dominion over his property, even though he has to move the property from its current location; in the second situation, the individual is stripped completely of control. A stronger relationship should be required where the deprivation is great.

*Id.* at ¶ 79.

**{¶30}** Applying the *Jones* test, we find that Appellant has repeatedly demonstrated difficulty restraining the cattle on the Norris property. The removal order is directly related to his failure to confine cattle, the offense for which the trial court imposed community control. Finally, future criminality is a genuine possibility, if not a probability, based on the testimony offered by Appellant's neighbors at trial. Accordingly, we find that the conditions of Appellant's community control do not constitute a confiscation or forfeiture

of Appellant's livestock, and, further, the trial court did not abuse its discretion in fashioning the terms of Appellant's community control.

## ASSIGNMENT OF ERROR NO. 2

**THE STATE FAILED TO PROVE THE ELEMENTS OF RESISTING ARREST. IVAN NORRIS'S ACTIONS WERE NEITHER RECKLESS NOR CAUSED HARM, AND SO THERE WAS NO RESISTING ARREST. THE VERDICT WAS BOTH LEGALLY INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶31}** R.C. 2921.33, captioned "Resisting Arrest," provides, in pertinent part, "(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." R.C. 2921.33(A). A violation of subsection (A) is a misdemeanor of the second degree. R.C. 2921.33(D).

**{¶32}** Appellant did not move for dismissal of the resisting arrest charge pursuant to Crim.R. 29 motion at the conclusion of the state's case-in-chief. However, a defendant is not required to move for acquittal in order to preserve a sufficiency of the evidence challenge on appeal. *State v. Heckathorn*, 7th Dist. Columbiana No. 17 CO 0011, 2019-Ohio-1086, ¶ 35.

**{¶33}** "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶34}** In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio

St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387, 678 N.E.2d 541.

{¶35} Appellant succinctly states his argument regarding the resisting arrest conviction as follows, "running 20 feet to the passenger-side window of a car (especially when no one else is inside the car) is not resisting arrest." (Appellant's Br., p. 14.) It is important to note that Appellant ran to the driver's side of the sedan, not the passenger side.

{¶36} We addressed an analogous fact pattern in *State v. Faith,* 7th Dist. Columbiana No. 03 CO 48, 2004-Ohio-3048. In that case, the appellant was involved in an altercation with her parents. She drove to the police station to file charged against her father, but, in the meantime, her parents called and reported the altercation to the police. After taking her statement, and recounting all of the evidence to an assistant prosecutor, a police officer informed Faith that she was under arrest.

{¶37} Faith responded, "[t]his is bull shit," then turned and walked toward the exit door of the police station. The police officer took her by the arm to prevent her from leaving, and told her again that she was under arrest. She became argumentative and refused to place her hands behind her back. The office had to forcibly restrain her in order to place her in handcuffs.

{¶38} At trial, Faith testified that she was never informed that she was under arrest. However, the police officer's testimony was corroborated at trial by the testimony of two dispatchers who witnessed the events leading to Faith's arrest. On appeal, we affirmed Faith's conviction observing that the trial revolved around two different stories about the same event, "either one of which, if believed, would be sufficient evidence to prove or disprove the state's case." *Id.* at ¶ 35.

{¶39} The uncontroverted facts in the above-captioned case establish that Appellant was informed the he was under arrest, he refused to submit, he turned and ran toward the sedan in the driveway, and he struggled with the officers when they attempted to subdue and handcuff him. Because the facts here are more egregious than the facts

in *Faith*, *supra*, we find that there was sufficient evidence in the record and the manifest weight of the evidence supports Appellant's conviction for resisting arrest.

## CONCLUSION

**{¶40}** In summary, we find that the terms of Appellant's community control do not constitute a confiscation or forfeiture of his livestock. Appellant is free to relocate the livestock or sell it for equivalent value. The conditions were reasonably related to rehabilitation, had a direct relationship to the animals running at large convictions, and were designed to prohibit future criminality and serve the statutory ends of community control. Further, while the conditions restrict Appellant's ability to keep livestock on the Norris Property, it does not restrict the use of the property by others. Finally, the uncontroverted facts in the record establish the essential elements of resisting arrest. Therefore, the terms of community control imposed by the trial court and Appellant's conviction for resisting arrest are affirmed.

Donofrio, J., concurs.

Waite, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the County Court of Noble County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**